**STATE of Tennessee, Appellee,**

v.

**Randy CLABO, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 12, 1995.

Permission to Appeal Denied by Supreme Court June 5, 1995.

Edward C. Miller, Public Defender, Dandridge, for appellant.

Charles W. Burson, Attorney General & Reporter, Jeannie Kaess, Asst. Attorney General, Nashville, Al C. Schmutzer, Jr., District Attorney General, G. Scott Green, Asst. District Attorney General, Sevierville, for appellee.

## OPINION

PEAY, Judge.

The defendant was convicted by a jury of two counts of aggravated sexual battery and one count of aggravated rape. For these convictions he received twelve (12) years on each of the aggravated sexual battery convictions and twenty-five (25) years on the aggravated rape conviction. The trial judge ordered all sentences to run consecutively, thereby resulting in an effective sentence of forty-nine (49) years.

In this appeal as of right, the defendant presents five (5) issues for review.

1. Whether the trial court erred in denying the defendant's request to review records from Child and Family Services.

2. Whether a fatal variance existed between the date stated on the notice of alibi and the date established by proof at trial.

3. Whether the evidence presented at trial was sufficient to support the jury's verdict.

4. Whether the trial court erred in admitting evidence of uncharged conduct and in failing to request an election of offenses.

5. Whether the trial court erred in sentencing the defendant by improperly applying and weighing mitigating and enhancement factors.

We find issues one (1), two (2), three (3), and five (5) to be without merit. Therefore, we affirm the trial court on these issues. Regarding issue four (4), we reverse in part and affirm in part. On the sexual battery charges, we affirm the trial court. On the aggravated rape charge, we reverse and remand this case for a new trial.

The proof offered on behalf of the State established that on an evening in February of 1992, Wan Rayfield II (hereinafter, Junior) invited the defendant to Junior's home. The defendant and his wife stayed at Junior's home for three (3) or four (4) days. This period represents the only time that the defendant had ever been in the Rayfield home. On one of those evenings during the visit, Junior, Junior's wife, victim B[1], B's friend victim N, N's parents, B's sister, B's cousin, the defendant, and Teresa, the defendant's wife, were present at the Rayfield home. Late that evening, the defendant entered B's bedroom after B, age ten (10), had fallen asleep. After climbing into B's bed, the defendant fondled B's genitals. When B requested that the defendant stop these acts, the defendant ceased momentarily and then resumed the acts.

On a subsequent evening, while B and his friend N, also age ten (10), were playing Nintendo in his bedroom, the defendant entered and instructed B to accompany him to the bathroom. There the defendant offered B five dollars ($5.00) to buy his silence and keep him from reporting the prior sexual act to his mother and father. Upon returning from the bathroom, the defendant requested that N accompany him to the bathroom. In the bathroom, the defendant fondled N's genitals and performed oral sex on him. Then, forcibly pinning N against the sink, the defendant inserted his penis into N's anus. According to N, the defendant then started "hunching." After the defendant performed

these sexual acts, N testified that the defendant had thrown a knife at him, cutting him on the leg; had kicked him out the door; and had thrown him twice. N also stated that he had thrown the knife back at the defendant and had struck him in the leg. According to B, N had returned from the bathroom after approximately ten (10) minutes and had appeared mad and confused. N spoke to B about the events which had occurred in the bathroom, and B then alerted family members. In response, a mock trial was conducted with the defendant's wife presiding as "judge."

On February 23, 1992, Dr. Michael St. Marie, a staff physician in the emergency department of the Sevier Medical Center, examined N. Dr. St. Marie recorded N's account of the sexual encounter. Referring to his notes, Dr. St. Marie testified that on February 23, N had reported that he had been at a friend's house the prior evening when the defendant had led N into the bathroom and had fondled his genitalia. Then he testified that the defendant had performed oral and anal sex on him. Although Dr. St. Marie found no evidence of any blood, tearing, or bruising, he testified that it would not be uncommon for there to be no trauma in an individual in this age group because of the size of the rectum at nine (9) years of age. Dr. St. Marie further testified that a one time penetration does not cause any laxity of the sphincter. Dr. St. Marie then tested N for sexually transmitted diseases. Although N tested weakly reactive for chlamydia, the result was inconclusive.

After examining N, Dr. St. Marie also examined B. He reported that B had exhibited no signs of blood, bruising, tearing, or rectal trauma. According to Dr. St. Marie, his findings were consistent with the account B provided of being fondled.

On February 23, 1992, Carol Morton, a member of the child investigative team at the Department of Human Services in Sevier County, interviewed N. N stated that the defendant had fondled N's penis, had performed oral sex on him, and had penetrated him anally. During the interview, N stated

---

1. The policy of this Court prohibits the use of the names of minor victims in sexual abuse cases.

that the defendant's penis had been "laying down" at some point during the incident. N never mentioned the knife, and he experienced some difficulty in recalling dates.

On February 25, 1992, Arthur Harmon, a detective with the Sevier County Sheriff's Department, interviewed the defendant regarding the charges in this case. Before interrogating him, Harmon informed the defendant of his rights and the charges being made against him. The defendant signed a rights waiver and gave a statement denying the charges. Two hours later, the defendant requested to speak with Detective Harmon again. Harmon again advised the defendant of his rights, and the defendant acknowledged that he understood his rights and the meaning of the waiver. The defendant then admitted to fondling B's penis and scrotum area in the bedroom and N's penis and scrotum area in the bathroom. Prior to this statement, Detective Harmon informed the defendant of the charges but not the details of the allegations (e.g. where the alleged offenses had occurred).

■ In his first issue the defendant contends that the trial court erred in denying the defendant's request to review records from Child and Family Services. We respectfully disagree. We doubt these records are discoverable because of the prohibition contained in Tenn.R.Crim.P. 16(a)(2).[2]

Even if discoverable, however, documents within the control or custody of the State may be inspected or copied by the defendant only if these documents are material to the preparation of the defense or are intended to be used by the State as evidence in chief at trial. *State v. Brown* 552 S.W.2d 383, 386 (Tenn.1977); *see also* Tenn.R.Crim.P. 16(a)(1)(C).

In the case at bar, the Child and Family Service's records were not material in the preparation of the defense. The defense wished to use the records to establish inconsistencies in the victims' statements. The records might have helped to impeach the victims or weaken their credibility, but they were not exculpatory. We find that the intended uses of the records by the defense do not constitute a material use. Furthermore, the defendant called the Child and Family Services' employee as a defense witness. From her testimony and her notes, the defense counsel established the discrepancies in the victims' statements. This issue lacks merit.

■ In his second issue the defendant contends that a fatal variance exists between the date recorded on the notice of alibi and the date as recalled by the two young victims. The defendant argues that according to the notice of alibi the offenses occurred around February 20. Yet the defendant asserts that the proof at trial established the date to be around February 14. We find that this variance is not fatal. Therefore, we respectfully disagree.

By analogy, we shall apply the law regarding variance between the indictment and proof at trial. The rule regarding variations between the indictment and the proof is expressed in *State v. Moss,* 662 S.W.2d 590, 592 (Tenn.1984):

> Unless substantial rights of the defendant are affected by a variance, he has suffered no harm, and a variance does not prejudice the defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, and (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense; all other variances must be considered to be harmless error.

*See also State v. Martin,* 743 S.W.2d 936, 937–38 (Tenn.Crim.App.1987).

In the case at bar, substantial rights of the defendant were not affected by the variance. First, the defendant was adequately informed and able to prepare a defense without any surprise at trial. The defendant knew the time period under scrutiny. The indictment informed the defendant that the alleged

---

**2.** This rule excepts from discovery reports made by state agents in connection with the investiga- tion or prosecution of the case.

acts occurred in February of 1992. Further, the indictment informed the defendant that the alleged acts occurred during the defendant's three (3) to four (4) day stay in the Rayfield home. This three (3) to four (4) day stay is distinctive because it represents the only time in which the defendant visited the Rayfield home. This information adequately alerted the defendant as to the time frame of the alleged acts.

The State did not mislead the defendant at trial. The State proceeded on a theory that these acts occurred around February 20. The State offered the testimony of Dr. St. Marie which supported this date. The State in opening and closing remarks established the date as around February 20. The State did not support any theory that the acts occurred on or around February 14.

Also, the defendant should not have been surprised at trial. The victims recalled that these acts occurred around Valentine's Day. Yet, the victims are young. These events occurred approximately six (6) months prior to the trial. One victim suffers from a slight mental deficiency and struggles with numbers and dates. It should not have been surprising that these victims would provide slightly inaccurate accounts. After the victims' testimonies, the State proceeded on a theory that the offenses occurred around February 20. The defense did not need to respond to the victims' testimonies by developing a defense to the February 14 date because the State did not adopt this theory.

Finally, inconsistency in the dates did not prevent the defendant from presenting an alternate defense. The victims testified that the defendant committed these acts during his visit. Also, the defendant signed a statement that he committed these acts during his stay in the Rayfield home. No alibi for the defendant's whereabouts on February 14 could eradicate this incriminating evidence. Furthermore, in the defendant's brief, he failed to present an alibi that would have provided him with a defense to the acts. Clearly the variance resulted in no harm to the defendant's preparation of a defense. He was afforded a fair opportunity to prepare an adequate defense. This issue lacks merit.

In his third issue the defendant contends that the evidence presented at trial was insufficient to support the jury's verdict. Specifically, he contends that due to the number of inconsistencies as well as the incredible testimony of the two victims, no rational trier of fact could have found the defendant guilty of these charges. The defendant points to discrepancies in the testimony of the victims as to the date of the incidents, the knife-throwing incident concerning victim N, and whether or not B actually peeped through the door of the bathroom thereby witnessing the crimes committed on N. We respectfully disagree.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the evidence in the light most favorable to the prosecution in determining whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this court. *Cabbage*, 571 S.W.2d 832, 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973).

A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier

of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982).

For the jury to find the defendant guilty of aggravated sexual battery, the State must have proven beyond a reasonable doubt that there was unlawful sexual conduct with a victim by the defendant accompanied by any of the following circumstances:

(1) Force or coercion [was] used to accomplish the act and the defendant is armed with a weapon.

(2) The defendant [caused] bodily injury to the victim.

(3) The defendant [was] aided or abetted by one or more persons; and force [was] used to accomplish the act or the defendant [knew] or [had] reason to know the defendant [was] mentally defective, incapacitated or helpless.

(4) The victim [was] less than thirteen (13) years of age.

*See* T.C.A. §§ 39–13–504 and 39–13–502.

For the jury to have found the defendant guilty of aggravated rape, the State must have proven one of the aforementioned circumstances enumerated in the preceding paragraph plus the element of unlawful sexual penetration of the victim by the defendant. *See* T.C.A. § 39–13–502.

At trial, B testified that the defendant had come to his bedroom and played with his penis. N testified that the defendant had played with his penis, had "sucked" his penis, and had put his penis in N's "bottom".

The record reveals that the defendant articulated and signed a statement admitting to the commission of sexual offenses with both of these victims. Detective Harmon testified that the defendant had voluntarily waived his rights and confessed to these acts. The defendant reported details of the acts which had not been disclosed to him by the investigating officer and which were consistent with the victims' testimonies. The victims reported the acts of the defendant to family members, a medical doctor, an employee at the Department of Human Services, and a jury. Throughout this process, their account remained largely consistent and uncontradicted by any proof. Any minor discrepancies or lapses in memory may be attributed to the fact that these victims were nine (9) years old at the time of the offense. Additionally, one of the victims suffers from a slight mental deficiency and experiences difficulty in recalling numbers or dates. The testimonies of the doctor and social worker largely corroborate the victims' testimonies. The jury has accredited the testimonies of the victims, Detective Harmon, Dr. St. Marie, and the social worker. A rational jury could conclude that any discrepancy in the victims' testimonies was minor and reasonable. In summary, a rational trier of fact could have convicted the defendant of two counts of aggravated sexual battery and one count of aggravated rape.

In his fourth issue the defendant contends that the trial court erred in admitting evidence of uncharged conduct and in failing to request an election of offenses. On this issue we affirm the trial court in part and reverse the trial court in part.

In *State v. Rickman*, 876 S.W.2d 824, 829 (Tenn.1994), our Supreme Court recently reaffirmed the special rule "admitting evidence of other sex crimes when an indictment is not time specific and when the evidence relates to sex crimes and when the evidence relates to sex crimes that allegedly occurred during the time as charged in the indictment." The Court, however, required that "[i]n such cases, the [s]tate must elect at the close of its proof-in-chief as to the particular incident for which a conviction is being sought." *Id.*

In the case at bar, the trial court did not err in allowing admission of the evidence of uncharged conduct had the State elected as to the particular incident for which a conviction was being sought. The defendant was charged with cognate crimes. The victims were merely testifying about the circumstance surrounding the crimes which had been charged. Therefore, in strict accordance with the law in Tennessee, the trial judge properly allowed this evidence of uncharged, sexual conduct. This issue lacks merit.

As to the issue of election of offenses, the State first contends that the defendant failed to raise this issue in his motion for new trial. We respectfully disagree.

The defendant raised the issue of election of offenses regarding the sexual battery charges. By implication, the defendant raised the issue of election of offenses regarding the aggravated rape charge. Furthermore, the error on the aggravated rape charge is plain error. In *State v. Ogle*, 666 S.W.2d 58, 60 (Tenn.1984) our Supreme Court held the following:

> Although, as a general rule, the appellate courts of this State do not consider issues that are not raised in the trial court, *State v. Pritchett*, Tenn., 621 S.W.2d 127, 135 (1981), plain error is a proper consideration for an appellate court whether properly assigned or not. *State v. Mackey*, Tenn., 553 S.W.2d 337, 340 (1977); *Davidson v. State*, 223 Tenn. 193, 443 S.W.2d 457 (1969). Rule 52(b), Tennessee Rules of Criminal Procedure, states that an error affecting 'the substantial rights of the accused' may be noticed at any time 'where necessary to do substantial justice.'

The law regarding election of offenses is expressed in *Burlison v. State*, 501 S.W.2d 801 (Tenn.1973). The *Burlison* rule applies to crimes of a sexual nature where there have been several separate incidents of sexual assault. *Burlison* states the following:

> We hold that it was the duty of the trial judge to require the State, at the close of its proof-in-chief, to elect the particular offense of carnal knowledge upon which it would rely for conviction, and to properly instruct the jury so that the verdict of every juror would be united on the one offense.

*Burlison*, 501 S.W.2d at 804.

This rule arises because of the unique exception to the general rule prohibiting proof of a defendant's other uncharged criminal acts. *State v. Shelton*, 851 S.W.2d 134, 136 (Tenn.1993). When the *Jamison v. State*, 117 Tenn. 58, 94 S.W. 675 (1906) court established the rule permitting admission of these other acts, the court ruled that "each unlawful act of carnal knowledge is a separate, substantive offense," rather than a continuous offense. *Jamison*, 94 S.W. at 676 (1906). "Thus, to avoid the prosecution of uncharged crimes in cases involving age of consent laws and other sexual crimes, the State is re-

quired to elect the specific offense upon which a guilty verdict would be demanded." *Shelton*, 851 S.W.2d at 137 (citing *Burlison*, 501 S.W.2d at 803). *Burlison* offers the following three (3) fundamental reasons for the election requirement:

> First, to enable the defendant to prepare for and make his defense to the specific charge; second, to protect him from double jeopardy by individualization of the issue, and third, so that the jury's verdict may not be a matter of choice between offenses, some jurors convicting on one offense and others, another.

*Burlison*, 501 S.W.2d at 803.

In the case at bar, the third justification addresses the gravest concern in that every defendant has "the well-established right under our state constitution to a unanimous jury verdict before a criminal conviction is imposed." *Shelton*, 851 S.W.2d at 137. The defendant has a constitutional right to a unanimous verdict on each offense. The defendant's "right to a unanimous jury before conviction requires the trial court to take precautions to ensure the jury deliberates over the particular charged offense, instead of creating a 'patchwork verdict' based on different offenses in evidence." *Shelton*, 851 S.W.2d at 137 (citing *State v. Brown*, 823 S.W.2d 576, 583 (Tenn.Crim.App.1991; citing *U.S. v. Duncan*, 850 F.2d 1104, 1110 (6th Cir.1988)). Election insures that each juror considers the same occurrence.

In the case at bar, the trial court did not err in failing to request the State to elect the offense for the first count of sexual battery on B. The defense counsel emphasizes the fact that B and the State referred to more than one episode of sexual contact, despite the fact that the defendant was only charged with one count of sexual battery against B. During testimony, B and the State, in an attempt to clarify, used phrases such as "the second time" or "the last time." In context, however, we do not find that the record indicates more than one incidence of sexual misconduct.

B testified in detail about one precise sexual incident in his bed. The State and defense counsel questioned B about that one precise

incident. No details were provided about any other incident. The minor innuendos about another incident were harmless. In considering the entire record in this cause, we are satisfied that the judge did not err in failing to require that the State elect upon which offense it was seeking a verdict in that only one specific incident was alleged to have occurred.

We also find that the trial court did not err in failing to request the State to elect the offense for the second count of sexual battery on N. N testified to one incident of fondling which occurred in the bathroom. Questions presented by the State concerned only the one incident in the bathroom. No details were provided about any other incident.

■ We find, however, that the trial court did err in failing to request an election of offenses in connection with the charge of aggravated rape of N. The State provided proof that the defendant performed oral and anal sex on the victim. These are two separate acts, each constituting penetration under the charge of aggravated rape. Yet, the defendant was only charged with one count of aggravated rape. The court presented to the jury the proof and allegations of two acts and asked the jury if the defendant could be convicted of one count of this act. Therefore, some jurors could have concluded that the defendant was guilty based upon the proof of the oral sex and not the anal sex, and some jurors could have concluded that the defendant was guilty based upon the proof of the anal sex and not the oral sex. The defendant may have been convicted by a jury of less than twelve (12). Since all twelve (12) members did not have to find the same facts or draw the same conclusions, we find that a grave constitutional error was committed in that the defendant may have been denied a unanimous jury verdict.

■ We cannot say that this error was harmless beyond a doubt. Prior to trial, the defendant moved to prevent the State from introducing proof concerning the oral sex incident. The State argued and the trial judge agreed that either the oral sex or the anal penetration constituted aggravated sexual rape. Further the State, in its summation to the jury, argued that the defendant

had performed oral sex on the victim and had anally penetrated the victim. The trial judge expressly charged the jury to rely on the arguments of counsel for each side's theory of the case. The jury instructions defined sexual penetration as including fellatio and anal intercourse. Additionally, we note that nowhere in the record can we determine with certainty if the indictment was read to the members of the jury and/or was taken with them when they deliberated. Other than the indictment, we find nothing in the record to indicate that the jury was aware that the State was relying on the act of anal intercourse to support the aggravated rape count.

This case is unfortunate. The acts committed were egregious and disturbing. These acts grow more disturbing when we consider the victims. Two innocent boys suffered the immediate pain and tragedy of sexual abuse, and now they will suffer throughout their lives as victims of crimes of nature. We do not wish to cause these victims more harm. However, all defendants deserve a fair trial with a unanimous verdict. The trial court denied this defendant his right to a unanimous jury verdict, and we cannot, therefore, under the dictates of *Burlison*, affirm this conviction. In our legal system, we do not sacrifice the means by which we reach a conclusion in order to reach palatable ends. Therefore, we order a new trial on the aggravated rape charge.

In his final issue the defendant contends that the trial court erred in sentencing him by improperly weighing mitigating and enhancing factors. Upon a review of the record, however, we find that the trial court properly sentenced the defendant.

■ When a defendant complains of his sentence, we must conduct a *de novo* review with a presumption of correctness. T.C.A. § 40–35–401(d) Sentencing Commission Comments. This presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991).

A portion of the Sentencing Reform Act of 1989, codified at T.C.A. § 40–35–210, estab-

lished a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

(1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40–35–113 and 40–35–114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

T.C.A. § 40–35–210.

In addition, this section provides that the minimum sentence within the range is the presumptive sentence. If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. If there are no mitigating factors, the court may set the sentence above the minimum in that range but still within the range.

In the case at bar, the trial court applied the following enhancement factors to each conviction:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. T.C.A. § 40–35–114(1).

(2) The offense involved more than one (1) victim. T.C.A. § 40–35–114(3).

(3) A victim of the offense was particularly vulnerable because of age or physical or mental disability. T.C.A. § 40–35–114(4).

(4) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement. T.C.A. § 40–35–114(7).

(5) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. T.C.A. § 40–35–114(8).

(6) During the commission of the felony, the defendant willfully inflicted bodily injury upon another person, or the actions of the defendant resulted in the death of or serious bodily injury to a victim or a person other than the intended victim. T.C.A. § 40–35–114(12).

(7) The defendant abused a position of public or private trust, or used a special skill in a manner that facilitated the commission or the fulfillment of the offense. T.C.A. § 40–35–114(15).

■ We find that the trial court erred in applying the enhancement factor that the offense involved more than one victim. In fact, each offense for which the defendant was charged involved only one victim. This was an improper enhancement factor, since there were separate convictions for each victim. *See State v. Lambert,* 741 S.W.2d 127, 134 (Tenn.Crim.App.1987).

■ We find that the trial court erred only partially in ruling that the age or disability of the victims constituted an enhancement factor. This enhancement factor should not have been applied to the sexual battery charge involving B. Nothing in the record indicates that B suffered from a disability. Age may not ordinarily be used as an enhancement factor where the charged conduct is aggravated sexual battery, whereby the age of the victim represents an element of the offense. Thus, in a conviction for aggravated sexual battery, age does not constitute an appropriate enhancement factor unless a victim was found to be *particularly vulnerable* due to age. *Lambert* 741 S.W.2d at 134. However, according to the record, N suffered from a learning disability. Therefore, we find that this enhancement factor was properly applied as to the convictions concerning him.

■ We also find that the trial court erred in finding desire for gratification to be an enhancement factor. Concerning the gratification factor in rape cases, the law in Tennessee is well established. Every rape is not implicitly committed for gratification. *State v. Adams,* 864 S.W.2d 31, 34–35 (Tenn. 1993). The State bears the burden of illustrating that the rape was sexually motivated

(i.e. committed for the defendant's pleasure). *Adams*, 864 S.W.2d at 35. In the case at bar, no evidence establishes that the defendant committed these acts for gratification. No words or actions by the defendant illustrate that his motive was pleasure and not, for example, violence. Therefore, this enhancement factor should not have been applied.

Lastly, we find that the trial court improperly applied the enhancement factor concerning the infliction of bodily injury upon another person during the commission of a felony as to the aggravated sexual battery convictions. The record does support, however, a finding of bodily injury in connection with the aggravated rape conviction.

We find that the remaining enhancement factors were appropriately and correctly applied.

Next, the defense contends that the trial court should have applied the following two mitigating factors:

(1) The defendant's criminal conduct neither caused nor threatened serious bodily injury. T.C.A. § 40–35–113(1).

(2) Substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense. T.C.A. § 40–35–113(3).

The trial court explicitly stated that it found no mitigating factors. Maintaining a presumption of correctness, we find insufficient evidence to support the application of either of these mitigating factors.

This Court finds that three (3) of the seven (7) enhancement factors were properly applied and two were properly applied to the convictions involving the victim N. We further find that application of the mitigating factors was correctly denied, and therefore, the applicable enhancement factors outweighed the mitigating factors. In summary, the record supports the sentence imposed and the sentence was not unreasonable.[3]

In summary, we find four (4) of the defendant's five (5) issues to be without merit. Due to the trial court's error in failing to request election of offenses as to the charge of aggravated rape, we therefore reverse the conviction on the first count and remand it for a new trial.

SCOTT, P.J., and WELLES, J., concur.

---

**3.** The defendant could have received an even lengthier sentence. The trial court treated the defendant as a Range I standard offender and sentenced him to a maximum forty-nine (49) years. In fact, the defendant should have been labeled a Range II multiple offender pursuant to T.C.A. § 40–35–106(b). The defendant could have received a maximum of eighty (80) years.