# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### June 2000 Session

## STATE OF TENNESSEE v. JAMES ELLISON ROUSE

**Direct Appeal from the Circuit Court for Maury County**
**No. 9575     Jim Travis Hamilton, Trial Judge**

---

**No. M1999-01807-CCA-R3-CD - Filed August 10, 2000**

---

The defendant was convicted of two counts of first degree murder and two counts of attempted first degree murder as the result of a shooting spree at Richland High School. The defendant, then seventeen, was tried and convicted as an adult, and sentenced to two consecutive life without the possibility of parole terms plus fifty years. The additional fifty-year term is modified to forty-two years. We affirm the two consecutive life without the possibility of parole terms holding that if a jury unanimously finds the existence of at least one aggravating circumstance beyond a reasonable doubt, then in its considered discretion, the jury may sentence the defendant to either life imprisonment or life without the possibility of parole absent a showing of "gross abuse of discretion."

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ. joined.

John Herbison, Nashville, Tennessee (on appeal);  Claudia S. Jack, District Public Defender, and Robert H. Stovall, Jr., Assistant Public Defender (at motion for new trial); Daniel Runde and Shara A. Flacy (at trial), for the appellant, James Ellison Rouse.

Paul G. Summers, Attorney General & Reporter, Elizabeth T. Ryan, Assistant Attorney General, and T. Michel Bottoms, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Introduction

The defendant, James Ellison Rouse, appeals from a Maury County jury conviction of two counts of first degree murder and two counts of attempted first degree murder. For these offenses, the defendant received two consecutive life without the possibility of parole terms, as well as two consecutive twenty-five year terms. In this appeal, the defendant challenges these sentences,

arguing:

       (1) The jury grossly abused its discretion by imposing sentences of life without the possibility of parole;

       (2) the trial court's two twenty-five year sentences were excessive; and

       (3) the trial court erred in ordering consecutive service.

After a thorough review of the record, the trial transcript, and the sentencing hearing transcript, we modify each twenty-five year sentence to twenty-one years, affirm the two life without the possibility of parole sentences, and affirm the trial court's imposition of consecutive service on all convictions.

**Facts**

On November 15, 1995, Jamie Rouse, the defendant, then seventeen and a high school senior, walked into Richland High School, in Giles County, at the beginning of the school day, armed with a .22 caliber rifle. The defendant was driven to school that day by co-defendant Stephen Abbott.[1]

Once inside Richland High School, the defendant walked down the north hallway. He stopped some two feet from his first victim, raised his rifle to his shoulder, aimed it at teacher Carol Yancey's head, and pulled the trigger. The rifle did not fire, so he cocked it again, took aim, and shot Carol Yancey in the head. She fell to the floor seriously wounded.

He then immediately shot teacher Carolyn Foster, who was standing beside Carol Yancey. Carolyn Foster died as a result of her wound. The defendant then lowered his rifle, smiled at a fellow student, and walked calmly down the crowded hallway. He again took aim, this time intending to shoot Coach Ron Shirey. He fired down the hallway and struck his third victim, Diane Collins, a fourteen year-old fellow student. Diane Collins died as a result of being shot in the neck.

James Nichols, a teacher, was very close to the defendant when the defendant shot and killed Diane Collins. Unaware of whether anyone had been hit, Nichols immediately grabbed for the rifle and demanded that the defendant give it to him. Nichols and the defendant began to struggle over the rifle and once again the rifle fired into the crowded hallway. Fortunately, this shot entered the ceiling. During the struggle, the defendant resisted all of Nichol's efforts to remove the rifle from him, saying, "I can't. I went too far." Ralph Johnson, a teacher, and two students helped Nichols subdue and disarm the defendant.

Arrested, charged, and tried as an adult, the defendant was found guilty as indicted: two counts of first degree murder and two counts of attempted first degree murder. In support of these convictions, the record reveals overwhelming evidence of guilt, numerous eyewitness accounts,

---

[1] Stephen Abbott, the co-defendant, was tried separately. He was convicted of second degree murder, attempted first degree murder, and attempted second degree murder. On appeal, this Court reversed the convictions for failure to charge the lesser offense of facilitation of a felony. See State v. Stephen John Abbott, No. 01C01-9704-CC-00122 (Tenn. Crim. App. filed December 9, 1998, at Nashville). The State's application for permission to appeal is still pending.

medical testimony concerning causes of death, and forensic testimony revealing that all shots were fired from the defendant's gun.

In fact, the only contested issue at trial was the defendant's mental state at the time of the offenses. On this point, the jury heard exhaustive testimony. The defense introduced evidence to support its contention that the defendant was suffering from diminished capacity as a result of a mental illness, i.e., paranoid schizophrenia. In the end, the jury credited the state's evidence and found the defendant guilty as charged. The state introduced rebuttal evidence to support its contention that the defendant was not suffering from diminished capacity as a result of mental illness at the time of these offenses. The jury, apparently crediting the state's witnesses, found the defendant guilty of both first degree murders and two counts of attempted murder. For the murders, the jury sentenced the defendant, and, for the attempts, the trial court imposed sentences. From this conviction and subsequent sentencing, the defendant, now incarcerated, appeals.

**Analysis**

Again, the defendant does not challenge any issue pertaining to the guilt/innocence phase of his trial. Instead, he only challenges the sentence imposed. Specially, he makes three claims:
  (1) The jury grossly abused its discretion by imposing sentences of life without the possibility of parole;
  (2) the trial court's twenty-five year sentence was excessive; and
  (3) the trial court erred in ordering consecutive sentencing.
Below, we review each claim separately, and conclude that the defendant's sentence is affirmed in all but one regard.

*Murder Sentencing*

After the jury's determination of guilt, a special jury sentencing hearing was held in accordance with Tenn. Code Ann. § 39-13-207, which governs sentencing in first degree murder cases where the State does not seek the death penalty. Section 39-13-207(a) provides that the jury shall determine in a separate sentencing hearing whether a defendant shall be sentenced to either life imprisonment or life without the possibility of parole.[2] The bifurcated hearing must be conducted in accordance with Tenn. Code Ann. § 39-13-204, excluding references to the death penalty. Tenn. Code Ann. § 39-13-207(a).

Section 39-13-204 prescribes the manner in which evidence is to be presented and considered during the sentencing phase. Counsel for both the state and the defense present evidence relevant to the issue of punishment. Sections 39-13-207 and 39-13-204 define the jury's role in considering this evidence and in determining the appropriate punishment. The jury must first decide if any statutory aggravating circumstances are proven beyond a reasonable doubt and if any mitigating circumstances exist in the case. See Tenn. Code Ann. §§ 39-13-204(e)(1) and 39-13-207(d). If the

---

[2] This punishment, life without the possibility of parole, was established by the Tennessee legislature in 1993.

-3-

jury unanimously finds the existence of at least one statutory aggravating circumstance beyond a reasonable doubt, then, in its considered discretion, the jury may sentence the defendant to either life imprisonment or life without the possibility of parole. Tenn. Code Ann. §§ 39-13-207(c) and 39-13-204(f)(2). In exercising this discretion, the jury is required to weigh and consider the statutory aggravating circumstance or circumstances proven beyond a reasonable doubt and any mitigating circumstances. Tenn. Code Ann. §§ 39-13-207(d) and 39-13-204(e)(1)(Supp. 1994). However, a jury is not required to find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. See State v. Harris, 989 S.W.2d 307, 317 (Tenn. 1999).

At this particular hearing, both the State and the defendant presented argument and proof. The State argued that two aggravating circumstances, Tenn. Code Ann. §§ 39-13-204(i)(3) (great risk of death to others) and (i)(7) (committed while having substantial role in murder), applied to the murder of Carolyn Foster, and one aggravating circumstance, Tenn. Code Ann. § 39-13-204(i)(3) (great risk of death to others), applied to the murder of Diane Collins. Next, the defendant argued that the jury should focus upon several mitigating factors. Those submitted include:
   (1) The defendant has no significant history of prior criminal activity;
   (2) the murder was committed while the defendant was under the influence of extreme emotional or mental disturbance;
   (3) the youth of the defendant at the time of the crime;
   (4) the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication, which was insufficient to establish a defense to the crime but which substantially affected his judgment;
   (5) the defendant's expression of remorse;
   (6) the defendant's amenability to treatment in a prison setting;
   (7) the defendant's history of childhood;
   (8) the defendant's background and family history;
   (9) the defendant's personality traits and/or character;
   (10) the jury's consideration of mercy and compassion;
   (11) the manner in which the crime was carried out demonstrated a lack of criminal sophistication or professionalism on the part of the defendant; and
   (12) the offenses were committed so closely in time and place as to indicate a single period of aberrant behavior.

After opening argument, the State presented three witnesses. Two were teachers at Richland High School and the other a teacher's aide. Each described the scene at Richland High School on the morning of November 15, 1995, and each emphasized the presence of other children and teachers. Dana Watson, the kindergarten teacher, testified that at the time of the shooting there were many students, including children, in the hallway. Patsy Gordon, the teacher's aide, testified that among the children present in the hallway were several which she quickly escorted out of harm's way into an adjacent classroom. Ron Shirey, a teacher and coach, provided even more detail, as he was the hallway monitor that morning. He observed all the students in the hallway and estimated the total number to be approximately fifty.

-4-

For the defendant, eight witnesses testified. The defendant's two aunts and grandfather testified generally to the defendant's upbringing, personality, and character. All agreed that the defendant had been quiet and shy throughout his life. Further, one of these aunts described the defendant as "never [being] aggressive" and as "well-behaved." On this point, the state cross-examined the aunt on her knowledge of two previous incidents. First, the state asked whether she was aware of a fight at school for which the defendant had been reported. And second, the state asked whether she knew that the defendant, years before, had either marked or carved an upside-down crucifix on his forehead.

Through another witness, a guidance counselor at Richland, the defendant's school records were introduced. These records proved that the defendant was on track to graduate and had successfully completed the expected number of work hours. Also, on cross-examination, this witness testified that at no time prior to the shootings did the defendant or his family request any type of psychiatric or psychological testing, evaluation or intervention.

A worker at the Rutherford Juvenile Detention Center, which housed the defendant pretrial, testified to her interactions with the defendant while he was awaiting trial. She testified that he prayed very frequently, was generally remorseful, and had purchased, on his own accord, a case of Bibles for the Center.

Along the same lines, a therapist at Middle Tennessee Mental Health Institute testified that the defendant was highly remorseful and harbored regret. Further, she added that the defendant, always quiet and shy, suffered from suicidal ideation and depression.

Finally, the defendant's parents testified. Mr. Rouse described his son's upbringing, his son's problems, his involvement in the life of his son, and his own involvement in drugs and alcohol. He first described his family history, including that of his brother, who suffered from psychological problems, attempted suicide, and died of AIDS. Further, he admitted to his own problems with alcohol and drugs, recalling his previous addictions and the financial and emotional stress they caused. Many days and nights, in front of his children, he and his wife fought and argued. Generally, this fighting, his problems, and his job distanced him from his children. Further, he did describe one particular problem with the defendant involving his car and speeding tickets. Also, he testified to his knowledge of two particular incidents: an incident in which the defendant pointed his rifle at his brother, and the previously discussed incident involving the upside-down crucifix.

Likewise, Mrs. Rouse described her son, his problems, and her husband's history of alcohol addiction and threatening behavior. She added that before the shooting the defendant had always been her "good boy," helping his younger brother and grandmother in various ways. Further, she described the defendant's job history, including the long hours he worked after school at a local gas and convenience store. In fact, she added that his paycheck would sometimes help support the family. Finally, she described the defendant after the shooting, his suicide attempt, his words of remorse and regret, and his charitable actions.

After closing argument, the jury deliberated for some three hours, considering not merely the testimony outlined above but all the relevant testimony from the trial. In the end, the jury found two aggravating circumstances for the murder of Carolyn Foster: Tenn. Code Ann. §§ 39-13-204(i)(3) and (7). The jury found one aggravating factor for the murder of Diane Collins: Tenn. Code Ann. § 39-13-204(i)(3). The jury then imposed life without the possibility of parole on both counts.

On this appeal, the defendant contends that these two life without the possibility of parole terms are excessive. That is, while he freely concedes that the aggravating circumstances found by the jury plainly apply, he argues that certain mitigating factors were inappropriately disregarded. On that basis, he appeals.

To succeed on this claim, the defendant bears a heavy burden, for, as we described above, the decision to impose life without the possibility of parole rests within the considered discretion of the jury. Further, the defendant must demonstrate to this Court that the jury not merely abused but rather arbitrarily imposed the sentence as a "gross abuse" of this discretion. See Tenn. Code Ann. § 39-13-207(g).

In this case, the defendant asserts that "gross abuse" of discretion occurred because the jury did not properly weigh and consider the proven mitigating circumstances. Particularly, the defendant complains of the jury's failure to find the mitigating circumstance defined by § 39-13-204(j)(8), which reads:

> The capacity of the defendant to appreciate the wrongfulness of the defendant's conduct or to conform the defendant's conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected the defendant's judgment.

Pointing to the testimony of both Deborah Richardson and Dr. A.K.M. Fakhruddin[3] at trial, the defendant argues that the jury had ample evidence to conclude that he was suffering from a most severe mental illness, paranoid schizophrenia, and was also experiencing depression, delusions and auditory hallucinations which in toto prevented him from controlling or even understanding his actions. While this Court, having reviewed the entire trial transcript, does acknowledge that the defense presented this evidence, we must also point out that the State presented its own experts, Dr. Rokeya Farooque and Dr. Samuel Craddock, who rather than confirming the paranoid schizophrenic diagnosis stated that, in their professional opinion, the defendant was not suffering from any major mental illness at the time of the offense that would have rendered him incapable of controlling or understanding his actions. Apparently, the jury credited these experts and their diagnosis rather than

---

[3] Both Deborah Richardson and Dr. A.K.M. Fakhruddin were expert witnesses on the defendant's psychiatric evaluative and treatment team.

that of the defense experts. This Court will not now second-guess that decision.[4] Therefore, in so far as the defendant claims the jury's failure to consider (j)(8) was a "gross abuse" of discretion, we must disagree.

Further, as for the jury's apparent rejection of the defendant's other proffered mitigating factors, two considerations guide our decision that no "gross abuse" of discretion is present. First, there is no requirement that a jury find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. See Harris, 989 S.W.2d at 317. Second, Tenn. Code Ann. § 39-13-204 requires the jury to find aggravating circumstances and consider mitigating circumstances but does not require any additional findings or standards for choosing life with the possibility of parole or life. In this case, the jury properly found two aggravating circumstances for the murder of Carolyn Foster and one aggravating circumstance for the murder of Diane Collins. Clearly, even considering mitigators like (i)(3) and (i)(7), upon this record the jury's findings and its imposition of life without the possibility of parole were not a "gross abuse" of discretion. That is, such a decision is not a "gross abuse" of discretion, as the defendant did enter the crowded hallways of a high school at the beginning of the school day and fire a rifle. Everyone in that hall and in the vicinity, teachers, teenagers and children, was put in immediate danger; unexpecting and unprotected, their lives were suddenly at the whim of the defendant. Three victims were shot, two lives were lost, and many more lives were changed forever.

### *Attempted Murder Sentencing*

After the jury sentencing, the trial court conducted its own sentencing hearing in consideration of the two attempted murder convictions. See Tenn. Code Ann. 40-35-203. The trial court imposed two consecutive twenty-five year sentences. The defendant now appeals those sentences as excessive.

When a defendant appeals his sentence, this Court's review is de novo with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned, however, upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is de novo. See State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785 (Tenn. Crim. App. 1991).

---

[4] It is the jury's choice to believe or disbelieve any witness. Credibility determinations will not be second-guessed by this Court on appeal. See State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

In this case, the trial court found several enhancing factors:
(1) the defendant was a leader in the commission of an offense involving two or more people;
(2) the offense involved more that one victim;
(3) the defendant employed a firearm during the commission of the offense; and
(4) the defendant had no hesitation about committing a crime when the risk to human life was high.
Further, the trial court found certain mitigating factors:
(1) his youth; and
(2) lack of a prior criminal record.

The trial court weighed these factors and imposed the statutory maximum, twenty-five years stating: "I think th[e] mitigating factors are far outweighed by the horror of these crimes, and what happened that day at Richland High School."

We find that this determination is not entitled to the statutory presumption of correctness for two reasons. First, enhancing factor Tenn. Code Ann. 40-35-114(3) (offense involved multiple victims), does not properly apply to either attempted murder in this case. See State v. Clabo, 905 S.W.2d 197, 206 (Tenn. Crim. App. 1995). Second, it is not clear from the record whether the trial court began at the proper presumptive sentence.[5]

Therefore, we review de novo. First, we consider the enhancing factors argued by the State. We find, as did the trial court, that Tenn. Code Ann. § 40-35-114(2) (leader in offense), (9) (firearm), and (10) (risk to human life) apply.[6] Next, we consider the defendant's proffered mitigating factors. We find, as did the trial court, that the defendant is entitled to some mitigation based upon his youth at the time of the offense and his lack of any real previous criminal record.

Further, as for the defendant's other proffered mitigating factors, we find only two factors applicable: lack of criminal record and youth. And even though the defendant goes to some length to argue that his poor mental condition should provide mitigation, we choose not to apply that factor here. For, as stated before, the jury heard conflicting evidence on this point and clearly credited the State's experts rather than the defendant's. We have reviewed all testimony and now find that the jury's decision was well-considered. Therefore, we, like the trial court, will not apply that factor.

Beginning with the statutory minimum of fifteen years, we place great weight on factor (10), great weight on factor (9), and some weight on factor (2) and enhance the sentence to the maximum ceiling. However, placing some weight on the mitigating factor (lack of a criminal record) and little weight on mitigating factor (youth), we must reduce the sentence. In the end, we determine that the

_____

[5] At the time, the proper starting point set by statute was the minimum within the range. Here it is unclear where the trial court began.

[6] We note the defendant does not contest the application of these factors.

appropriate sentence, on each count, is twenty-one years. As we outline below, we do not disturb the manner of service.

### *Consecutive Sentencing*

After the jury had imposed the two life without the possibility of parole sentences and after the trial court had imposed the two twenty-five year sentences, the trial court then ordered that all the sentences be served consecutively. The defendant now argues that consecutive service is excessive. Part and parcel of this argument, the defendant argues that two consecutive life without the possibility of parole terms are unnecessary, logically nonsensical, and excessive.

In Tennessee, a trial court may impose consecutive sentencing when the court finds by a preponderance of the evidence that:

(1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) [t]he defendant is an offender whose record of criminal activity is extensive;

(3)[t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) [t]he defendant is sentenced for an offense committed while on probation; or

(7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b)(1)-(6); see also State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Furthermore, where, as here, the defendant is classified as a "dangerous offender," the court is required to determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. See State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

In this case, the trial court's findings in regard to consecutive sentencing are brief: . . . and if those facts don't make him a dangerous offender, then I don't know what would. And I do think that in the sentences the court imposes, the court must consider the protection of the public from a person like Mr. Rouse. . . . It will further

be the judgment of the court that these two sentences be served consecutive one with the other, and consecutive with Count One and Count Two of this indictment.

The defendant asks this Court to first determine that these findings are not entitled to the presumption of correctness. However, after conducting our review, we conclude that the record supports the trial court's findings regarding the defendant's classification as both a dangerous offender and a multiple offender.

Next, the defendant argues that the imposition of two life without the possibility of parole terms are excessive in so much as they are unnecessary to protect the public and are logically nonsensical. Deciding this issue, we are guided less by the strictures of logic than we are by precedent. Our Supreme Court has declined, on several occasions, to give this issue merit denying permission to appeal in cases in which an additional sentence has been ordered served consecutive to a sentence of life without the possibility of parole. See, e.g., State v, Robinson, 930 S.W.2d 78, 85 (Tenn. Crim. App. 1995), perm. to appeal denied (Tenn. 1996); State v. Leon Barnett Collier, No. 03C01-9602-CR-00072 (Tenn. Crim. App. filed Jan. 14, 1997, at Knoxville), perm. to appeal denied (Tenn. 1997); State v. Sammie Lee Taylor, No. 02C01-9501-CR-00029 (Tenn. Crim. App. filed Oct. 10, 1996, at Jackson), perm. to appeal denied (Tenn. 1997). We defer to their guidance but also note that as this crime and its impact on the families and the community were most severe, upon a finding of guilt, only a severe and lengthy punishment would be appropriate.

**Conclusion**

For these reasons, we affirm the sentences as imposed by the trial court in all but one regard: The defendant's two twenty-five sentences are now reduced to two twenty-one year sentences. Therefore, the defendant's new sentence is as follows: Two consecutive terms of life without the possibility of parole followed by two consecutive terms of twenty-one years.

_____
JOHN EVERETT WILLIAMS, JUDGE