# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

## STATE OF TENNESSEE v. CLYDE HAMBRICK, JR.

**Direct Appeal from the Criminal Court for Unicoi County**
**No. 4214, Arden L. Hill, Judge**

---

**No. E1998-00893-CCA-R3-CD - Decided June 27, 2000**

---

The defendant was sentenced to forty-eight years, eleven months, and twenty-nine days as a Range I standard offender after a jury verdict was returned against him on four counts of aggravated sexual battery, four counts of sexual battery, and eight counts of assault. These convictions are reversed because of the failure to sever the trials; the erroneous admission of evidence of other crimes, wrongs, or acts; the failure to properly elect offenses; the erroneous charge to the jury that aggravated sexual battery is a lesser included offense of rape; and plain error as to the assault convictions. We remand for new trial as to victim C., and the defendant may stand trial for eight counts of sexual battery. As to victim J., the statute of limitations bars retrial for the eight counts of assault.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

WILLIAMS, J., delivered the opinion of the court, in which TIPTON and GLENN, JJ., joined.

Deborah Black Huskins, Johnson City, Tennessee, for the appellant, Clyde Hambrick, Jr., at trial. Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Clyde Hambrick, Jr., on appeal.

Paul G. Summers, Attorney General & Reporter, Marvin S. Blair, Jr., Assistant Attorney General, Joe C. Crumley, Jr., District Attorney General, and Kenneth Carson Baldwin, Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

The defendant, Clyde Hambrick, Jr., appeals from his Unicoi County convictions of four counts of aggravated sexual battery, four counts of sexual battery, and eight counts of assault. After a jury trial, the trial court sentenced the defendant to forty-eight years, eleven months, and twenty-nine days as a Range I standard offender. From these convictions and sentences the defendant appeals, asserting that:

        (1) the trial court erroneously denied his motion to sever offenses;

        (2) the trial court erroneously allowed into evidence other crimes, wrongs, or

acts;
(3) the state failed to properly elect offenses;
(4) the trial court erroneously charged the jury as to aggravated sexual battery as a lesser offense of rape;
(5) the trial court erred in sentencing the defendant; and
(6) cumulative error deprived the defendant of due process.

After careful review, we reverse the judgment from the trial court and remand for new trial. As to victim C., the defendant will stand trial for eight counts of sexual battery. As to victim J., the applicable statute of limitations bars retrial.

## BACKGROUND

The defendant was originally charged as follows:
(1) Seven counts of sexual battery and seven counts of rape against C., allegedly occurring from March of 1991 through September of 1991;
(2) six counts of sexual battery and six counts of rape against J., allegedly occurring from March 1991 through August 1991; and
(3) one count of sexual battery against A., allegedly occurring in March of 1991.

Before the jury trial, the trial court granted the state's motion for *nolle prosequi* on eleven counts:
(1) three counts of sexual battery and three counts of rape against C., allegedly occurring in July, August, and September of 1991;
(2) two counts of sexual battery and two counts of rape against J., allegedly occurring in July and August of 1991; and
(3) the sole count of sexual battery against A., allegedly occurring in March of 1991.

The defendant was tried on four counts of sexual battery and four counts of rape against C. and four counts of sexual battery and four counts of rape against J. The jury found the defendant guilty of all four counts of sexual battery against C. They found the defendant not guilty of all four counts of rape against C. but guilty of the four charged lesser included offenses of aggravated sexual battery. The jury found the defendant not guilty of the four counts of sexual battery and four counts of rape against J. but guilty of all eight charged lesser included offenses of assault.

## FACTS

After a jury verdict, we review the evidence in the light most favorable to the state. The proof in this case established that the defendant raped and molested his stepdaughters on numerous occasions during the months of March, April, May, and June of 1991 in Unicoi County.

### Testimony of Victims' Mother

In 1980, the defendant married Connie Taylor, who had three daughters from a prior relationship: A., J., and C. They first lived together in a trailer in Carter County. A. was six, J. was five, and C. was two years of age when mother married the defendant. Mother worked numerous jobs throughout their marriage. The defendant often cleaned cars at home. Mother testified that they lived in over twenty different locations during the marriage, and she often found it difficult to associate times and events with a specific residence. In February of 1991, the family moved to Whispering Pines in Unicoi County. At that time, A.[1] was seventeen, J. was sixteen, and C. was thirteen years of age. While residing in Whispering Pines, the mother generally worked from 7:00 a.m. to approximately 4:00-6:00 p.m. A. was working at the local McDonalds and attending Happy Valley High School, and the remaining stepdaughters attended Happy Valley Elementary.[2]

In May of 1991, substantial problems developed in the marriage. The defendant refused to attend A.'s wedding, and the relationship between mother and the defendant subsequently deteriorated. On or about July 10, 1991, the defendant moved out. The couple's divorce became final September 3, 1991, and mother moved to Johnson City. They apparently began a reconciliation on or about October 31, 1991, when mother and the defendant moved to Washington County.

For financial reasons, A., her husband Shawn, and their child Tyler moved into the Washington County residence with mother and the defendant. One evening, mother overheard a heated argument from the area occupied by her daughter's family. She intervened and at one point ordered Shawn to leave. As A. attempted to leave with Tyler and Shawn, mother asked her and Tyler to stay.

During the exchange, mother asked A. what Shawn had ever done for her. A. replied, "If you only knew what Daddy has been doing over the years." Mother testified that at that point the defendant, who had been involved in the dispute, threatened to take custody of Tyler from A. if she did not shut up.

Mother said that A. refused to explain that remark. Mother asked C., and she replied, "Oh, God, Momma," and fled up the stairs with her hands over her face. When mother later questioned the defendant about the remarks, he explained that he had threatened to refuse to take the children to the mall if they were friendly with a Freddie Crum, an individual mother briefly saw while separated from the defendant.

---

### Testimony of A.

A., twenty-four years old at the time of the trial, was six years old when her mother married the defendant. She testified that while residing in Unicoi County she began work, in either February

---

[1] Although the victims are no longer minors, we refer to them by these initials.

[2] Although Happy Valley was in Carter County and the family lived in Unicoi County, they lived very near the county line; thus the attendance in Carter County schools.

or March of 1991, at the local McDonalds. She usually worked weekends and three or four days a week after school until 8:00 p.m.

A. testified that at one point she asked her sisters if the defendant was "bothering them," and they replied, without elaboration, that he was. A. said that she didn't tell her mother about the molestations because she was afraid of the defendant, who had made threats in the past, and she was worried that her mother might kill the defendant and then be arrested.

A. said that after she married she and her family moved in with her mother, for economic reasons, on two different occasions, the last one being when the family resided in Washington County. She concluded her direct testimony by addressing the "blow-up" at that residence.

**Testimony of J.**

J., twenty-three years of age at the time of the trial, was five years old when her mother married the defendant. She lived in Carter County with the family, attended Happy Valley Elementary and then Happy Valley High School, and at ten years of age enjoyed playing basketball and did so for the next several years. She testified that the defendant generally stayed home, where he detailed cars. Like her mother, she had difficulty associating events and times with specific residences because of the family's numerous relocations.

J. testified that when she reached approximately ten years of age living in Carter County, the defendant began molesting her. The defendant, complaining of a headache, would have Jason, J.'s younger stepbrother, go outside to play. He would then take J. into the bedroom, and she would start rubbing his head. Her testimony described a progressive continuation of sexual advances and molestation. He first started rubbing her legs and kissing her. This lasted "[f]or a couple of weeks." He told her not to tell because no one would believe her and she would not see her mother or brother again.

The next stage occurred when he had her rub his penis after he removed it from his clothing. Again, he warned her not to tell anyone. She testified that he told her that he, as her basketball coach, would let her play more if she cooperated and that would help her play better. She said that he pursued this level of activities a couple of times a week for a couple of weeks.

She testified that after a couple of weeks, when she was "eleven, going on twelve," he again escalated his molestation and had her perform fellatio on him. She said that he would ejaculate in her mouth and have her spit up in the bathroom. Finally, when she was approximately thirteen and still living in Carter County, he had intercourse with her. While molesting her, he began having her sister, C., act as a look-out while the bedroom door was closed.

She testified that the defendant engaged in either intercourse or fellatio with her at least two times every other week while they lived in Unicoi County. She said the defendant would follow the same routine: (1) mother and A. would be at work, (2) he would complain of headaches, (3) C.

-4-

would be posted as a look-out, and (4) Jason would be sent out to play.

J. testified that when C. became twelve or thirteen years of age, the defendant would sometimes choose C. when he had a "headache," using J. as the look-out. J. said that she and C. had discussed what was happening to them.

### Testimony of C.

C. was twenty years of age at the time of the trial and was two years old when her mother married the defendant. She testified that at the age of seven or eight, while living in Carter County, her father began recruiting her to assist with his "headaches." He would complain of a headache, often telling J. to alert him if anyone came to the house. A. and mother would both be working during this time. Jason would be instructed to go outside to play in cars or with neighbors.

C. essentially testified as to the same progression of molestations described by her sister. She recalled one specific time when he threatened that if she ever spoke to anyone about it she would never see her mom, her sisters, or her brother again. She testified that she was approximately thirteen years of age when her family moved to Unicoi County, and she was already engaging in intercourse with her stepfather.[3]

C. testified that after the "blow-up" at the residence in Washington County, she wrote a note to her friend at school advising her friend that her stepfather "had been messing with her" and was involved in sexual relations with her. Afterwards, C. spoke with a counselor at school, who contacted the Department of Human Services.

C. estimated that she performed fellatio on the defendant on twenty different occasions in March through June of 1991, but she could not give an exact number because "he done it so many times . . . [she couldn't] even keep up with how many times he done it." He engaged in intercourse with her "more than once" during each of these months.

### Testimony of Step-brother

Jason's testimony affirmed portions of the defendant's modus operandi described by his stepsisters: his father's asserted headaches and subsequent instructions to play outside. Jason testified that while living in Washington County, J. and C. told him that the defendant was "messing" with them and touching them in places where a father should not touch his daughters. Jason did not tell anyone about that discussion at that time.

### Medical Testimony

---

[3] The state unsuccessfully attempted to associate details with an assault incident; for example, where she was living during the first act of intercourse or when he threatened on one occasion.

Dr. Daniel Earl testified that he examined C. and J. on or about February of 1993, after they were referred to him by the Department of Human Services. In part due to their age and sexual activity, he could neither confirm nor discredit any claims of sexual abuse.

### Defendant's Proof

The defendant testified and denied either raping or sexually assaulting his stepdaughters. He stated that during the altercation in Washington County, he threatened to contact the Department of Human Services if his stepdaughter A. and her husband did not properly care for Tyler. He did not hear the exchange between mother and A. regarding what he had done to the stepdaughters over the years. The following persons testified to the defendant's character and his positive relationship with his family, including his stepdaughters: Vanessa Holtsclaw (a niece of the defendant) and her husband Jeff; James Green, a former co-worker; Joshua Reifert, a great-nephew of the defendant; Kimberly Johnson, the defendant's niece; Deborah Harrison, another niece, and her husband, Sam Harrison.

### ANALYSIS

In cases involving multiple sexual offenses, the state may introduce evidence of uncharged assaults if the indictments addressing the charged offenses are not time-specific. See State v. Rickman, 876 S.W.2d 824, 829 (Tenn. 1994). The state must elect, however, which offenses constitute the bases for potential convictions, a difficult responsibility when alleged offenses cover significant time spans and involve victims, young at the time of assault, who can not remember specific dates. In addition to this election issue, the trial court in the instant case was also required to address evidentiary and severance issues, because multiple victims were involved.

### Severance

We first address the severance issue. The defendant faced eight counts involving alleged offenses against C. and eight counts involving alleged offenses against J., and he asserts that the trial court erred by denying his pretrial motion to sever those offenses. We agree.

Two or more offenses may be joined if they "constitute parts of a common scheme or plan or if they are of the same or similar character." Tenn. R. Crim. P. 8(b).[4] Three categories of such evidence are recognized:

    (1) distinctive designs or signature;

---

[4] This Rule addresses permissive joinder, versus mandatory joinder, in which two or more offenses "are based upon the same conduct and or arise from the same criminal episode." Tenn. R. Crim. P. 8(a).

(2) larger, continuing plan or conspiracy; and

(3) same transaction.

See State v. Hallock, 875 S.W.2d 285, 289 (Tenn. Crim. App. 1993). A defendant has a right to sever such permissively joined charges unless the trial court determines that:

(1) the offenses are part of a common scheme or plan; and

(2) evidence of one would be admissible at trial for the other[s].

See Tenn. R. Crim. P. Rule 14(b)(1); State v. Hoyt, 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995); Hallock, 875 S.W.2d at 289 (Tenn. Crim. App. 1993); see also Tenn. R. Evid. 404(b).

On a motion to sever offenses, the trial court evaluates "the facts and circumstances involved in the various crimes that are charged." State v. Morris, 788 S.W.2d 820, 822 (Tenn. Crim. App. 1990). The trial court must:

(1) Hold a pretrial hearing;

(2) determine the relevance of evidence regarding material issue, other than character; and

(3) determine whether the probative value of such evidence outweighs the potential for unfair prejudice.

See Hoyt, 928 S.W.2d at 944. Absent an abuse of discretion, this Court does not disturb a trial court's denying a motion to sever offenses. See State v. Shirley, 6 S.W.3d 243 (Tenn. 1999).

Although the defendant now asserts that the counts were not all part of a common scheme or plan, at the pretrial hearing the defendant apparently agreed to that particular prong of the test and restricted the argument to the evidentiary issue. The trial court did not specify the relevant types of common scheme evidence, but the state argues that the evidence qualified as both a distinctive design and as a continuing plan to victimize the stepdaughters for sexual gratification. We next address the second component of the inquiry, the admissibility of the evidence regarding one victim at a trial for the offenses against the other victim.

"A common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes," Hallock, 875 S.W.2d at 289, and the "primary issue" to be considered in a severance case is whether the evidence of one offense would be admissible in the trial of the other if the two offenses remained severed, see Spicer v. State, 12 S.W.3d 438, 445 (Tenn. 2000). Therefore, the crux of the issue is evidentiary relevance. See State v. Moore, 6 S.W.3d 235, 239 (Tenn. 1999).

Generally, "evidence that the accused committed crimes independent of those for which he is on trial is generally inadmissible because such evidence lacks relevance and invites the finder of fact to infer guilt from propensity." Hallock, 875 S.W.2d at 290. Under certain circumstances, however, such evidence may be relevant to prove a genuinely contested issue other than propensity. See id. Although Tennessee Rule of Evidence 404(b) does not enumerate such circumstances, they may include motive, intent, guilty knowledge, identity of the defendant, absence of mistake or accident, and "a common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the other." Collard v. State, 526 S.W.2d 112, 114 (Tenn.

1975).

We must follow the guidance provided by two recent Tennessee Supreme Court decisions regarding whether severance was erroneously denied and whether such error would require reversal. See Spicer, 12 S.W.3d 438; State v. Moore, 6 S.W.3d 235 (Tenn. 1999). Admission of "common scheme or plan" evidence has expanded by circular argument: The evidence is often considered relevant and admitted "merely because it is evidence of a common scheme or plan." Moore, 6 S.W.3d at 239 n.5 (citing Hallock, 875 S.W.2d at 292). Admission should be contingent on the "common scheme or plan" evidence addressing "identity, guilty knowledge, intent, motive, to rebut a defense of mistake or accident, or to establish some other relevant issue." Id. (quoting Hallock, 875 S.W.2d at 292). Otherwise, "common scheme or plan" evidence becomes a conduit by which propensity evidence reaches juries. See Hallock, 875 S.W.2d at 291-92.

In Moore, the defendant was accused of committing three counts of child rape; one in August 1993 and two in November 1993, against one victim. See id. at 238. Neither identity nor any other generally recognized criteria for admitting the "common scheme or plan" evidence was at issue, and the Supreme Court thus found the evidence of the August offense inadmissible in the trial for the November offenses. Therefore, the trial court erroneously denied the defendant's motion to sever the August offense from the indictment. See id. at 239-40.

The trial court in the instant case ruled that the evidence at issue was admissible under Tennessee Rule of Evidence 404(b) as "a common scheme or plan for a commission of two or more crimes so related to each other that proof of one tend[ed] to establish the other." Identity was never an issue; neither was any of the generally recognized circumstances for admitting the evidence. Therefore, the evidence regarding molestations of one victim was inadmissible at a trial for the offenses against the other, and the motion for severance was erroneously denied.

Having concluded that the defendant's motion for severance should have been granted, we now determine if that denial constituted reversible error. For reversal, the defendant must show that the error probably affected the judgment. Id. at 242. The recent Tennessee Supreme Court decision in Spicer compels our conclusion that the error in the instant case was not harmless. "In most severance cases, the line between harmless and prejudicial error is in direct proportion to the degree . . . by which proof exceeds the standard required to convict." Spicer, 12 S.W.3d at 447 (citation omitted). In Spicer, the evidence for conviction consisted only of the victim's testimony and medical testimony establishing that the victim exhibited a physical condition consistent with multiple acts of penetration. Id. at 448. While acknowledging the appellate courts' deference to jury verdicts and noting evidence sufficient to support the conviction beyond a reasonable doubt, the Supreme Court observed that the evidence "was certainly not overwhelming." Id.

The Spicer court further observed that open-dated indictments involving multiple victims are usually, but not inherently, prejudicial because the state may enter evidence of virtually endless sexual episodes from each victim. See id.; see also Rickman, 876 S.W.2d at 829. Such a presentation presents a "real probability" of overwhelming a jury and inducing a conviction based

in great part in perceived propensity to commit offenses. See id. That probability existed in Spicer, and the consolidation of the offenses was not harmless. See id. at 449.

In Spicer, one victim testified to being raped every week, and the other testified that she had been fondled so often that she had lost count. See id. at 448. Both victims testified to sexual encounters unrelated to the offenses eventually elected by the state. See id. The perceived propensity, in conjunction with the less than abundant evidence, led the Supreme Court to conclude that the consolidation error "affirmatively affected the outcome of the trial." Id. Similarly, in the instant case, despite evidence sufficient to sustain a conviction beyond a reasonable doubt, the evidence consisted only of the accusations by the victims and testimony by Jason to the effect that he was often sent outside to play. The jury heard a litany of ongoing offenses from each victim. In these circumstances, we conclude that it affirmatively appears that the jury was prejudiced by propensity evidence.

Our conclusion does, however, not bar corroborating testimony in this case. For example, assuming other rules of admissibility were satisfied, one sister would not be barred from testifying that the defendant developed a headache, took the other sister in the bedroom with him, told the testifying sister to advise him if anyone entered the house, and closed the bedroom door. However, we conclude that the denial of severance was error and remand for new trial.

### Admissibility of Other Crimes, Wrongs, and Acts

Apart from the issue of admissibility of uncharged offenses occurring within the time frame addressed in the indictment, the trial court admitted evidence of other incidences of sexual offenses against the two sisters, committed in Carter, Unicoi, and Washington Counties. The Carter County offenses occurred before the Unicoi County offenses and began approximately five years before them. The testimony concerning sexual offenses occurring in Unicoi County addressed charged offenses and an equal or greater number of uncharged offenses. Any offense occurring in Washington County was after the Unicoi County incidents. The trial court admitted the evidence to "tell the [victims'] story." The defendant asserts this evidence was erroneously admitted to establish acts in conformity with the other charged offenses. The defendant further asserts that the trial court erred when it excluded evidence of his acquittal on substantially similar charges regarding one of the victims in Carter County.

Prior to admitting evidence of other crimes, upon request, a trial court must (1) hold a jury-out hearing on the proffered evidence; (2) determine that a material issue exists, other than conduct conforming with a character trait, and, upon request, state on the record that material issue, therefore, and the reasons for admitting the evidence; and (3) exclude the evidence if the probative value is outweighed by the danger of unfair prejudice. See Tenn. R. Evid. 404(b). In the instant case, the trial court held such a hearing, identified motive, intent, and common scheme or plan as the material issues, and balanced the probative value against the potential for unfair prejudice. This Court applies an abuse of discretion standard if the trial court applies the required test. See State v. Dubose, 953 S.W.2d 645, 652 (Tenn. 1997).

As discussed in our analysis of the severance issue, the evidence, although sufficient to support guilty verdicts, was not overwhelming, and the evidence of the other crimes was extremely prejudicial. Regarding the defendant's proffered evidence of acquittal, the trial court barred that evidence because it was not relevant, being unrelated to the instant case, and was not a fact of consequence that would have made the determination of any fact of consequence to the determination of the act more probable or less probable than without that evidence. See Tenn. R. Evid. 401, 402. We conclude that the trial court properly excluded reference to the acquittals.

### Election of offenses

In cases involving separate incidents of sexual assault, charged in indictments that are not time-specific, "it [is] the duty of the trial judge to require the State, at the close of its proof-in-chief, to elect a particular offense of carnal knowledge upon which it would rely for convictions, and to properly instruct the jury so that the verdict of every juror would be united on the one offense." See Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973); see also State v. Clabo, 905 S.W.2d 197, 204 (Tenn. Crim. App. 1995). With this requirement, the Tennessee Supreme Court sought to:
(1) Enable defendants to prepare defenses for specific charges;
(2) protect defendants from double jeopardy; and
(3) insure unanimous jury verdicts for convictions.
See id. at 803.

The unanimity concern is the most significant. See State v. Shelton, 851 S.W.2d 134, 137 (Tenn. 1993). Although the federal constitution's required unanimity of jurors on criminal convictions has not been extended to the states through the Fourteenth Amendment, see Apodaca v. Oregon, 406 U.S. 404 (1972), such unanimity is required by our state constitution, see State v. Brown, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991).

To satisfy the election requirement, the state need not prove that an offense was committed on a specific date, unless that date is either an element of the crime or essential to proving that offense. See Shelton, 851 S.W.2d at 137. The Tennessee appellate courts have noted the difficulties of prosecuting cases of sexual abuse committed against small children and have relaxed some rules of evidence and procedure in appreciation of those difficulties. See id. at 139. "The election doctrine only requires the State to select which of multiple offenses in evidence it relies upon to seek the conviction to ensure that the jury focuses on and is unanimous with respect to that conviction." State v. Brown, 992 S.W.2d 389, 392 (Tenn. 1999). The state may therefore remedy a victim's inability to recall a specific date by associating the elected incident or incidents with unique surroundings or circumstances, such as meaningful events in the victim's life: "[A]ny description that will identify the prosecuted offense to the jury is sufficient." Shelton, 851 S.W.2d at 138, 139. For example, "the beginning of school, a birthday, or a relative's visit" will suffice. See id. Otherwise, "[i]f the prosecution can not identify an event for which to ask a conviction, then the court can not be assured of a unanimous decision." Id. at 138.

The unanimity requirement concerns us in the instant case. We review the indictment and

the elections.  The defendant was tried on sixteen counts involving two victims:
>    (a) Four counts of sexual battery and four counts of rape committed against C.; and
>    (b) Four counts of sexual battery and four counts of rape committed  against J.

Each indictment alleged that the defendant assaulted a victim "on or about" either March, April, May, or June of 1991.  During closing argument,[5] the state elected as follows:
> [T]he State is going to elect the first time it occurred each month, we contend constitutes the offense of rape. . . . and the second time it occurred would constitute the offense of sexual battery.

We note that the indictments prepared by the state read Count One, on or about March 1991, charges sexual battery and Count Two, on or about March 1991, charges rape.  The potential for confusion is evident: A juror asked, "Is he saying that it's the first or second time it happened that month or [every time][6]?"  The trial court responded that the election referred to the first incident for each month.

Then the trial court held a bench conference and apparently received permission from each counsel to comment on the evidence during the instructions.  The trial court then addressed the jury:
> I am going to try and explain it.  There's four (4) charges of rape against one alleged victim and four (4) charges of sexual battery against the same alleged victim. There's four (4) charges of rape against the other alleged victim and four (4) charges of sexual battery against the other alleged victim.  There has been testimony of two or three times a week over months.  Some of you might conclude beyond a reasonable doubt that the first week of the month of May it happened.  Others, well, it did the last month.  So I want to make sure that all of you agree if he is guilty beyond a reasonable doubt of one incident, and because there is evidence that there might have been many times during the month, the State only charged one, then they have to elect which, and all of you have to agree beyond a reasonable doubt whether that is the time.  The State has chosen the first sexual contact in any month they say is going to be rape.  And then you will have to determine whether or not it was.  And the second sexual contact between the defendant and the alleged victim in any month is a sexual battery, and you're–you should not consider it except as I will instruct you later about any other incident in that month but they can only find him guilty, if at all, of one rape each month and one sexual battery each month.  Now, I hope it helps a little bit.  So they have to elect.  The law says if it says unspecified date–if you knew exactly what date it was supposed to be like the fifth of May and the fifth of July and

[5] According to the Tennessee Supreme Court, election at the conclusion of the state's proof-in-chief is the better practice: A defendant may more properly tailor his defense if he knows the events that will be deliberated as bases for convictions.  See Burlison, 501 S.W.2d at 804.

[6] Although the transcript reads "ever in," we conclude that the juror likely asked the question as presented in the above text.

so forth, but there is no definite date here. It's unspecified dates and so they have to say which incident, first or second and whatnot. Have I made myself clear.

The election and accompanying instruction by the trial court do not satisfy the unanimity requirement. In C.'s case, the jury heard testimony alleging multiple offenses per month against each victim. None of these offenses, however, were identified with any more specificity, either by narrowing the relevant date or by focusing the jury on a particular offense associated with a meaningful event.

In a similar situation, the Tennessee Supreme Court reversed and remanded convictions. In State v. Tidwell, 922 S.W.2d 497, 501 (Tenn. 1996), the victim testified that various sexual activity occurred approximately once a week over fourteen months. Analogous with the instant case's indictments, which charged offenses "on or about" a given month, the Tidwell indictments charged commission of a specific offense on a "blank" day of a given month. See id. Other than two discrete incidents that the victim described with particularity, she could not associate a particular act with a specific time. See id. at 499. On the petitioner's appeal from denial of post-conviction relief, the state suggested that the jury had no separate offenses from which to choose, non-unanimity was impossible, and the state was not required to elect offenses. The Tennessee Supreme Court, however, disagreed with the state's contention that "jury unanimity is attained in such cases because, although the jury may not be able to distinguish between the various acts, it is certainly capable of unanimously agreeing that it took place, the number, and the manner described." Id. at 501. Therefore, those convictions not described with particularity were reversed.

In the instant case, the state's election invited the jury to pick, not necessarily as a group, one of several offenses for a given week, and many for a given month, and deliberate over that offense as a rape. Although the trial court warned the jury that, as a body, they must agree that an offense had been proven, beyond a reasonable doubt, for a given week, the election and instructions provided no means for a trier of facts to select an act and conclude that the act either occurred on or about a specific date or was associated with a given event. This process was repeated for the second charge, sexual battery. Compare Tidwell, 922 S.W.2d at 501. This election did not narrow the time frame below a given month. No means was provided the jury "to match a specific conduct to a specific count." Id. The jury was not instructed to deliberate on an offense assigned to a specific week or associated with a specific event, and "the testimony did not distinguish one event in a given month from any other." Id. We cannot be comfortable with the reliability of the results. See id. at 502. Therefore, we find neither a proper election nor a serviceable substitute in this case.

**Lesser Included Offenses**

The trial court charged the jury with aggravated sexual battery as a lesser included offense of the rape charges. The state asserts that while aggravated sexual battery is not a "lesser included" offense of rape, it is a "lesser grade" of that offense. The defendant asserts that the trial court erred because aggravated sexual battery is not a lesser included offense of rape and because the proof did not support the charge.

Under Tennessee law, offenses may be quantified, as one offense being "lesser" or "greater" than another, by the legislature's classification of offenses in Tennessee Code Annotated § 40-35-110. This statute establishes a hierarchy of offenses, from the greatest to the least. The legislature further sets forth more severe punishment for the greater offenses. A simple threshold inquiry in determining lesser included offenses is to first determine the classification of the original charge. Offenses which carry a greater classification than the original charge can not be considered as a lesser included offense. Offenses which carry the same classification as the original charge can not be considered as a lesser included offense. Therefore, offenses that are classified the same or greater than the original charge should not be considered a lesser included offense. Only offenses which have a lesser classification than the original charge may be considered as a lesser included offense.

This simple inquiry answers the question presented on this appeal: Whether aggravated sexual battery, a Class B felony, is a lesser included offense of rape, also a Class B felony. These two offenses carry the same classification as Class B felonies.

Therefore, it was error for the trial court to charge aggravated sexual battery, a Class B felony, versus sexual battery, a Class C felony, as a lesser included offense to rape, a Class B felony. Had this been the only error committed, we would have affirmed the defendant's convictions on eight counts of sexual battery and remanded for resentencing. However, because of the additional errors we reverse the defendant's convictions on the four counts of aggravated sexual battery and remand for new trial. We note that the state may proceed against the defendant at the new trial on eight counts of sexual battery, four counts as a result of this error and four counts as a result of errors earlier assigned.

**Cumulative Error**

We have identified reversible errors regarding issues of election, severance, evidence, and lesser included offenses. Our analysis has also noted that despite sufficient evidence to convict the defendant of eight counts of sexual battery, that evidence is not overwhelming. We conclude that even if the convictions were not reversed on the basis of any particular assigned error, the sum of these concerns questions the reliability of the verdict and necessitates a new trial.

**Plain Error**

This Court generally reviews only issues presented. See Tenn. R. App. P. 13(b). However, under limited circumstances this Court may consider an issue not formally presented. See id.; see also Tenn. R. Crim. P. 52(b). Under the applicable standard, the error must constitute "plain error," affecting a "substantial right" of the accused. See State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). The determinative factors as regards "plain error" are:
    (4) the record must clearly establish what occurred in the trial court;
    (5) a clear and unequivocal rule of law must have been breached;
    (6) a substantial right of the accused must have been affected;

(7) the accused did not waive the issue for tactical reasons; and

(8) consideration of the error is "necessary to do substantial justice."

Id. at 641-42.

After careful analysis, we note that this jury trial resulted in the defendant being convicted of eight counts of assault all against victim J.:  Four counts were charged to the jury as lesser included offenses of the four indicted counts of sexual battery, and four counts were charged to the jury as lesser included offenses of the four indicted counts of rape.

Tennessee Code Annotated § 40-2-102 provides that "all prosecutions for misdemeanors shall be commenced within twelve (12) months next after the offense has been committed" and in the instant case the assaults were alleged to have occurred in 1991.  The defendant was indicted on these charges on October 11, 1994.

We are obliged under the facts of this case to follow our Supreme Court's ruling in State v. Pearson, 858 S.W.2d 879 (Tenn. 1993), which held that a conviction for misdemeanor assault was barred by limitations in the absence of showing that the defendant knowingly and voluntarily waived the statute of limitations.  See Pearson, 858 S.W.2d at 885-87 (Tenn. 1993).

No evidence in this record shows the defendant's awareness of this issue, and therefore, he could not have knowingly and voluntarily waived any objection to the jury's considering the misdemeanor charges.  Therefore, the eight assault convictions involving victim J. are reversed and dismissed as barred by the statute of limitations.

## Sentencing Issues

The defendant asserts that the trial court erred by sentencing him to the maximum range for aggravated sexual battery and sexual battery convictions and by imposing the sentences for these convictions consecutively.  We briefly address these issues.  See Jacobs v. State, 450 S.W.2d 581 (Tenn. 1970).  If the record affirmatively shows that the trial court considered the sentencing principles and the relevant facts and circumstances, this Court reviews the imposed sentences de novo with a presumption of correctness.  See Tenn. Code Ann. § 40-35-401(d); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  The trial court found one enhancing factor, the defendant's abuse of a private trust, and two mitigating factors, the absence of threat of serious bodily injury and the non-statutory factor of the defendant's providing for the family.  See Tenn. Code Ann. §§ 40-35-113(1); -114(15).  The trial court chose to give no weight to the mitigating factors, and, under the facts and circumstances of this case, we find no error in that decision.

Further, the trial court correctly imposed consecutive sentences because the defendant was "convicted of two (2) or more statutory offenses involving sexual abuse of a minor."  See Tenn. Code Ann. § 40-35-115(b)(5).  These issues are without merit.

## CONCLUSION

The judgment from the trial court is reversed and remanded on eight counts of sexual battery involving victim C.  The eight assault convictions involving victim J. are dismissed.