# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 21, 2002 Session

## STATE OF TENNESSEE v. JOHN BRIGGS

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S44818     R. Jerry Beck, Judge**

_____

**No. E2001-01933-CCA-R3-CD**
**November 13, 2002**
_____

The appellant, John Briggs, a pharmacist, pled guilty in the Sullivan County Criminal Court to sixteen counts of unlawfully dispensing a controlled substance. The trial court sentenced the appellant to a total effective sentence of twenty years incarceration in the Tennessee Department of Correction, with all but eight years to be served on probation. On appeal, the appellant argues that the trial court erred in denying full probation. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

R. Wayne Culbertson, Kingsport, Tennessee, for the appellant, John Briggs.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On February 9, 2001, the appellant pled guilty to sixteen counts of unlawfully dispensing a controlled substance, Class D felonies. Tenn. Code Ann. § 53-11-401(a)(1) (1997). The appellant, a pharmacist, owned Stone Drive Pharmacy in Kingsport. Between February 1, 1997, and May 6, 2000, the appellant filled "over eleven hundred (1100) prescriptions that were not authorized," dispensing a total of "approximately a hundred and forty thousand (140,000) pills" to at least sixteen different individuals. Specifically, the charges alleged the following offenses:

|  | Name | Number of Falsified Prescriptions | Pills Dispensed |
|---|---|---|---|
| Count 1: | James Greene | 368 | 70,000 Darvocet |

|  |  |  |  |
|---|---|---|---|
|  |  | 201 | 20,000 Lortab |
| Count 2: | Judy Greene | 17 | 475 Lortab |
|  |  | 9 | 540 Darvocet |
| Count 3: | Phil Rader | 28 | 3,200 Darvocet |
| Count 4: | Jeffrey Kilgore | 51 | 3,060 Lortab |
| Count 5: | Bobby Moore | 40 | 1,600 Lortab |
| Count 6: | Henry Anderson | 73 | 1,095 Diazepam |
| Count 7: | Marilyn Mullins | 17 | 1,340 Diazepam |
| Count 8: | Peggy Sanders | 36 | 1,620 Diazepam |
| Count 9: | Dean Hensley | 10 | 1,000 Lorazepam |
| Count 10: | Thomas Ketron | 41 | 4,100 Lorazepam |
| Count 11: | Jonathan Hughey | 3 | 1,440 Lortab |
| Count 12: | Patty Street Owens | 36 | 2,540 Butalbital |
| Count 13: | Cora Dockery | 60 | 1,800 Alprazolam |
| Count 14: | Mamie Trent | 90 | 9,000 Lorcet |
| Count 15: | Judith Gilreath | 29 | 3,300 Propoxyphene |
| Count 16: | Traci Trent | – | – Darvocet |

All of the pills dispensed were either Schedule III or Schedule IV substances.[1] The appellant's wife, who also worked at the pharmacy, assisted in the dispensation of the controlled substances. The plea agreement stipulated that the appellant would be sentenced as a standard Range I offender, with a release eligibility of thirty percent (30%), and would receive a sentence of four years incarceration on each count. Furthermore, the agreement provided that the sentences on counts one through five would run consecutively; the sentences on counts six through sixteen would run concurrently with each other and with count five for a total effective sentence of twenty years. The plea agreement provided that the decision regarding alternative sentencing would be determined by the trial court. Additionally, the appellant was fined one thousand dollars ($1,000) on each count for a total fine of sixteen thousand dollars ($16,000).

On July 13, 2001, the trial court held a probation hearing. Both the State and the appellant relied on the information presented at the guilty plea hearing and on the information contained in the appellant's presentence report. Additionally, the appellant presented fifty-seven letters and petitions from members of the community asking the court for leniency in sentencing the appellant. Moreover, the appellant informed the court that, because of fines and forfeitures, he had sold his business and paid ninety-seven thousand, four hundred and twenty dollars ($97,420) into the registry of the court. As a condition of his plea, the appellant had also forfeited his pharmacist's license.

---

[1] The appellant illegally issued the following controlled substances: Darvocet, Schedule IV; Lortab, Schedule III; Diazepam, Schedule IV; Lorazepam, Schedule IV; Butalbital, Schedule IV; Alprazolam, Schedule IV; Lorcet, Schedule III; and Propoxyphene, Schedule IV.

In examining the appellant's suitability for probation, the trial court acknowledged that the appellant was presumed to be a favorable candidate for alternative sentencing. As a positive factor, the trial court recognized that, similar to many professionals, the appellant had been involved in service to his community. Further, the appellant possessed no previous criminal record, was a deacon at the largest church in Kingsport, enjoyed the support of his family and the community, cooperated with the police, and underwent rehabilitation for his substance addiction. However, the trial court noted the need for deterrence and the need to avoid depreciating the seriousness of the offense. Accordingly, the trial court denied probation for the appellant on counts one and two, but granted the appellant probation on counts three through sixteen, resulting in a total of eight years in confinement with release eligibility after service of thirty percent (30%) of the sentence. The appellant timely appealed this ruling.

## II. Analysis

This court will review the appellant's challenge to the manner of service of his sentences de novo. Tenn. Code Ann. § 40-35-401(d) (1997). However, because we conclude that the trial court carefully and thoroughly considered the sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id.; State v. Clabo, 905 S.W.2d 197, 205 (Tenn. Crim. App. 1995). In any event, the burden is on the appellant to demonstrate the impropriety of his sentences. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; see also State v. Griffin, 914 S.W.2d 564, 567 (Tenn. Crim. App. 1995).

We must consider the following factors in the course of our de novo review: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the appellant's potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102 and -103 (1997), -210 (Supp. 2001); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991).

On appeal, the appellant asks this court to determine:
(1) whether the trial court committed reversible error in sentencing by denying the appellant's request for probation or alternative sentencing;

(2) whether the trial court committed reversible error in sentencing by enhancing the appellant's sentence based upon the presence of the facts and elements of the offenses charged;

(3) whether the trial court committed reversible error in sentencing by denying probation for deterrence purposes; and

(4) whether the trial court committed reversible error in sentencing by not properly balancing all mitigation factors by failing to observe that any applicable enhancement factor was offset by mitigation factors.

The appellant's first and third issues center around concerns that the trial court erred when it failed to grant full probation on all counts. Specifically, the appellant contends that the trial court erred in denying alternative sentencing. Respectfully, we note that the trial court granted the appellant an alternative sentence when it granted the appellant probation on fourteen of the sixteen counts.

Initially, we recognize that an appellant is eligible for probation if the sentence actually imposed is eight years or less. Tenn. Code Ann. § 40-35-303(a) (1997). Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6). In the instant case, the appellant is a standard Range I offender convicted of Class D felonies; therefore, he is presumed to be a favorable candidate for alternative sentencing. However, this presumption may be rebutted by "evidence to the contrary." State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). The following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Zeolia, 928 S.W.2d at 461.

"The determination of whether the appellant is entitled to an alternative sentence and whether the appellant is entitled to full probation are different inquiries." State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). An appellant seeking full probation bears the burden of establishing his suitability for full probation, regardless of whether he is entitled to the statutory presumption favoring alternative sentencing. Id.; see also Tenn. Code Ann. § 40-35-303(b). To prove his suitability, the appellant must establish that granting full probation will "'subserve the ends of justice and the best interest of both the public and the [appellant].'" State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 8 (Tenn. 2000). Moreover,

> [i]n determining one's suitability for full probation, the court may consider the circumstances of the offense, the defendant's potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a

sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes.

Boggs, 932 S.W.2d at 477. While recognizing the appellant's lack of criminal history, the trial court nonetheless determined that the seriousness of the offense and the deterrent effects of incarceration warranted a denial of full probation.

In State v. Hooper, 29 S.W.3d 1 (Tenn. 2000), our supreme court specifically noted five factors for consideration when denying probation solely upon the basis of deterrence:

1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole.
. . . .
2) Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior.
. . . .
3) Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case.
. . . .
4) Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective.
. . . .
5) Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.

Id. at 10-12. A trial court is not limited to these five considerations "provided that (1) the sentencing court states [any] additional factors on the record with specificity, and (2) the presence of these additional factors is supported by at least some proof." Id. at 12.

In the instant case, based upon the cases heard daily by the court, the trial court noted that there was a drug problem in the community. This general comment alone is not sufficient to deny probation based solely upon deterrence. See State v. Fields, 40 S.W.3d 435, 442 (Tenn. 2001). However, the trial court also noted that the appellant was a member of a criminal enterprise in which his wife, a co-defendant, was also involved. See State v. Timothy C. Jewell, Jr., No. W2000-00998-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 371, at *12 (Jackson, May 15, 2001). Additionally, we observe that the charged criminal conduct occurred over a period of at least three years and involved a voluminous number of pills, specifically 90,000 pills to one individual, which facts also demonstrate a criminal enterprise. See State v. Glenda Eva Tilley, No. E2001-00264-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 601, at *12 (Knoxville, Aug. 9, 2001). Furthermore, the numerous supportive letters from members of the community demonstrate that the appellant's case was well-known in the community, suggesting that the case received substantial publicity. Notably, several of the letters indicate that the appellant's case was publicized in local newspapers; specifically, one

of the letters mentioned that the appellant's case "ma[de] the front page news." Accordingly, the trial court did not err in considering the deterrent effect of confinement in denying the appellant full probation.

Regardless, even if the trial court erred in applying the deterrence factor, it nevertheless correctly denied total probation to avoid depreciating the seriousness of the offense. This court has previously concluded that the nature and circumstances underlying the criminal conduct may alone give rise to the denial of probation. Tenn. Code Ann. § 40-35-210(b)(4). See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). When imposing confinement based upon the seriousness of the offense, the trial court must first determine if "'the circumstances of the offense as committed [are] especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree.'" Zeolia, 928 S.W.2d at 462 (quoting (State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995)).

The appellant pled guilty to a violation of Tennessee Code Annotated section 53-11-401(a)(1) (1997), which statute provides that it is unlawful for a pharmacist

> to distribute or dispense a controlled substance in violation of § 53-11-308 or to distribute or dispense any controlled substance for any purpose other than those authorized by and consistent with such person's professional or occupational licensure or registration law, or to distribute or dispense any controlled substance in a manner prohibited by such person's professional or occupational licensure or registration law.

Tennessee Code Annotated section 53-11-308(c) (1997) prohibits the dispensation of Schedule III or Schedule IV drugs by a pharmacist without a valid prescription. Thus, the appellant would have been guilty of an offense had he falsified only one prescription for each of the sixteen people named in the information. However, "[i]n considering the circumstances of the offense[s], the court may go beyond the negotiated plea and consider the 'true nature' of the crime[s]." State v. Biggs, 769 S.W.2d 506, 507 (Tenn. Crim. App. 1988) (citing State v. Hollingsworth, 647 S.W.2d 937, 939 (Tenn. 1983)). In the instant case, the trial court noted:

> But significant to the Court's decision here today, that the total of those figures alone was approximately a hundred and forty thousand (140,000) pills in the sixteen (16) various and independent charges that were involved. So this appears to be extraordinary. . . . Now, what happened when these hundred and forty thousand (140,000) pills were released into the community to individuals, whether they be suffering from pain, as explained by [the appellant] in his statement to the Probation Officer, you do have a hundred and forty [thousand (140,000)] pills going out of control into the community without the supervision of the Tennessee Department of Health or the . . . Board of Pharmacy. So that does create a substantial danger to the community because we don't know what these people – they might have taken them, which could have been a detriment to them,

they may have, in order to obtain income, sold them to other people, could have, you know, the potentialities are endless of where these pills could have gone because they clearly went out of control of the drugstore and the licensed pharmacist when they got out. So the nature of this offense appears to be in the extreme.

In sum, over the course of three years, the appellant dispensed an extraordinary amount of pills through a large number of falsified prescriptions. See State v. James Randolph Bradford, No. 01C01-9004-CC-00101, 1991 Tenn. Crim. App. LEXIS 296, at **5-6 (Nashville, Apr. 18, 1991). The trial court found that the appellant was remorseful and that he had enrolled in a rehabilitation program to fight his substance addiction; however, the court nevertheless found that the appellant had a "sustained intent to violate the law." This finding is supported by the appellant's distribution of 140,000 pills to sixteen individuals over a three year period. Again, we note that the trial court gave careful consideration to the appellant's sentencing. We agree with the trial court that the circumstances underlying the appellant's convictions were of an excessive or exaggerated degree. See State v. Charles Chesteen, No. E1999-00910-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 455, at **31-32 (Knoxville, June 8, 2000). Accordingly, we conclude that the trial court did not err in denying the appellant full probation.

The appellant also contends that the trial court erred in enhancing the appellant's sentence "based upon the presence of the facts and elements of the offenses charged." The appellant and the State entered into a plea agreement which was approved by the trial court. The agreement specifically provided the sentence the appellant was to receive for each conviction. Thus, the record does not reflect that the trial court "enhanced" any sentence based upon facts which were elements of the charged offenses.

Finally, the appellant alleges that the trial court improperly balanced the enhancement and mitigating factors. However,

[t]he appellant's sentence is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years. Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record.

Boggs, 932 S.W.2d at 475-476. We conclude that the trial court did not err in its application of the enhancement or mitigating factors.

### III. Conclusion
Based upon the foregoing, we affirm the judgment of the trial court.

_____

NORMA McGEE OGLE, JUDGE