IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

**STATE OF TENNESSEE v. EUNYCE MARIE SAUNDERS**

**Direct Appeal from the Criminal Court for Sullivan County
No. S40,916   Phyllis H. Miller, Judge**

---

**No. E1998-00230-CCA-R3-CD - Decided June 8, 2000**

---

Defendant Eunyce Marie Saunders was convicted by a jury in the Sullivan County Criminal Court of one count of vehicular homicide and one count of aggravated assault. After a sentencing hearing, the trial court sentenced Defendant as a Range I standard offender to concurrent terms of five years for vehicular homicide and four years for aggravated assault, with the sentences to be served in the Tennessee Department of Correction. Defendant challenges both her convictions and her sentences, raising the following issues: (1) whether the evidence was sufficient to support her convictions;(2) whether the trial court erred when it determined the lengths of her sentences; and (3) whether the trial court erred when it failed to impose alternative sentencing. After a review of the record, we affirm the judgment of the trial court as to Defendant's convictions and the lengths of Defendant's sentences, but we modify the judgment as to the manner of service of Defendant's sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed as Modified**

WOODALL, J. delivered the opinion of the court, in which RILEY, J. joined and WITT, J. dissented in part and concurred in part.

Julie A. Rice, Knoxville, Tennessee, Counsel for Appellant, Eunyce Marie Saunders on appeal, and Donald Spurrell, Johnson City, Tennessee, Counsel for Appellant, Eunyce Marie Saunders at trial.

Paul G. Summers, Attorney General and Reporter, Mark E. Davidson, Assistant Attorney General, H. Greeley Wells, Jr., District Attorney General, and Gregory Alan Newman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

JUDGE WOODALL delivered the opinion of the court.

**I.  FACTS**

Daniel Armstrong testified that on June 25, 1997, at approximately 3:45 p.m., he turned his vehicle onto Fort Robinson Drive in Kingsport, Tennessee. As Armstrong drove down the street at a speed of 65 miles per hour, he observed that a green Jeep that had initially been 100 feet in front of him had pulled away to a distance of approximately 400 feet away. Armstrong was aware that the speed limit on Fort Robinson Drive was 30 miles per hour, and he knew that he was driving at a speed of 65 miles per hour because he had checked his speedometer.

Armstrong testified that as he was following the Jeep, he observed that it never slowed down or swerved until it crashed into another vehicle. Armstrong also observed that as a result of the collision, the vehicle that was struck by the Jeep became airborne and hit a tree. Armstrong began slowing down immediately as he began "running over car parts that were all over the road" and he eventually stopped his vehicle and approached the vehicle that had been knocked off the street. Armstrong also observed that after the impact with the other vehicle, the Jeep began swerving and it traveled out of his view.

Hubert Carty testified that he lived on Fort Robinson Drive approximately 200 feet from the home of Harold and Ruby McGhee. When Carty was at his residence on June 25, 1997, he observed the McGhee's vehicle with its turn signal on in preparation to pull into the driveway. Carty then saw a Jeep crash into the McGhee's vehicle and he heard "a boom like a bomb [going] off." Carty also observed that as a result of the impact, the McGhee's vehicle traveled through the air for a distance of 90 feet. In addition, Carty observed that even after the impact, "the Jeep was coming down the street real fast."

Ruby McGhee testified that on June 25, 1997, she and her husband Harold were returning home from visiting her family. Ms. McGhee recalled that as they approached their home on Fort Robinson Drive, her husband activated the vehicle's turn signal and prepared to turn left into their driveway. Ms. McGhee did not recall anything else until she woke up after the vehicle she was in hit a tree. Ms. McGhee subsequently woke up in the trauma center of a hospital where she was told that her husband had died. Ms. McGhee also learned that she had sustained bruised ribs, bruised nerves, and a concussion.

Officer Melanie Church testified that while she was on duty on June 25, 1997, she investigated a wreck on Fort Robinson Drive. When Church arrived at the scene, she observed a white vehicle that appeared to have hit a tree. Church also observed that there was extensive damage to the rear of the vehicle and there was debris in the street.

Officer Church testified that shortly after she arrived at the scene, she located a green Jeep that had been driven by Defendant. The Jeep was approximately 300 yards away from the white vehicle that had hit the tree. Church also observed that the Jeep had crashed into another vehicle that was parked on the side of the road. In addition, Church located Defendant and Defendant's young daughter sitting under a tree across the street from the Jeep. Church observed that Defendant appeared to be upset.

Officer Church testified that when she asked Defendant what had happened, Defendant stated that she did not see the other vehicle until she crashed into it. Defendant also told Church that before the crash occurred, "she had reached down to put a tape in" while she was singing nursery rhymes to her daughter. Defendant never told Church that she had a seizure or any similar condition that contributed to the wreck.

Officer Church testified that the part of Fort Robinson Drive where the wreck occurred is in a predominantly residential area with a speed limit of 30 miles per hour. In addition, Church testified that Fort Robinson Drive is a two-lane road.

Dr. William McCormick testified that he performed an autopsy on Mr. McGhee, and in his opinion, Mr. McGhee died from a severe chest injury that tore his aorta in two places and caused him to bleed to death. In addition to this injury, Mr. McGhee sustained multiple bone fractures and severe lacerations to the face.

Officer Dale Farmer testified that he investigated the scene of the crash on Fort Robinson Drive. When he examined the scene, Farmer observed that there were no signs of braking by the Jeep before impact. As a result of his investigation, Farmer determined that the McGhees' vehicle had traveled 151 feet after impact and Defendant's Jeep had traveled 653 feet after impact. Farmer opined that at the time of impact, Defendant's Jeep was traveling at a rate of speed in excess of 60 miles per hour.

Officer Farmer testified that when he first spoke with Defendant, she stated that she did not know anything about the accident, but she wondered why the other vehicle had stopped in front of her. Defendant also told Farmer that immediately before the collision, "she was feeling fine." When Farmer spoke to Defendant on a subsequent occasion, Defendant disputed Farmer's conclusion that speed was a contributing factor to the wreck. Defendant never told Farmer that she experienced occasional seizures.

Dr. Kenneth Fenslew testified for the defense that according to Defendant's medical records, Defendant had suffered from partial, or absence, seizures for a period of seven to eight years. Dr. Fenslew noted that according to a blood sample taken soon after the wreck, Defendant had a therapeutic level of a drug commonly used to treat seizures in her system. Dr. Fenslew opined that a person who suffers from these type of seizures may not remember having a particular seizure. Dr. Fenslew could not determine whether Defendant had suffered from a seizure either before or after the wreck, but he believed that Defendant should not drive a vehicle if she did not have control of her seizures.

Defendant testified that she had suffered from seizures for several years and she had received various medications to control her seizures. However, Defendant did not know whether she had a seizure at the time of the wreck.

Defendant testified that she and her daughter were listening to a tape and singing along when she turned her Jeep onto Fort Robinson Drive. However, Defendant could not recall anything else

until she got out of the Jeep and was treated by medical personnel after the wreck. Defendant did not recall asking anyone why the other vehicle had stopped in front of her.

Defendant testified that although she could not remember the wreck, she knew that she never saw another vehicle in front of her.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence was insufficient to support her convictions for vehicular homicide and aggravated assault.

Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995). Since a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof on the sufficiency of the evidence at the appellate level. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Under Tennessee law, vehicular homicide "is the reckless killing of another by the operation of an automobile, airplane, motorboat or other motor vehicle: [a]s the proximate result of conduct creating a substantial risk of death or serious bodily injury to a person." Tenn. Code Ann. § 39-13-213(a)(1) (1997). In addition, aggravated assault is the reckless use of a deadly weapon that causes bodily injury to another. Tenn. Code Ann. § 39-13-102(a)(2)(B) (1997). Further,

> "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn. Code Ann. § 39-11-302(c) (1997).

Defendant contends that the evidence was insufficient to support her convictions because the State failed to establish that she committed the offenses with the required "reckless" mental state. Defendant essentially concedes that the State established all other elements of both offenses.

### A.

-4-

Initially, the State argues that the evidence was sufficient to establish that Defendant acted recklessly because the proof showed that Defendant chose to drive her vehicle on the day of the wreck, even though she knew that she could have a seizure.

As support for its argument, the State cites State v. Carrie M. Freeman, No. 02C01-9406-CR-00113, 1995 WL 66582 (Tenn. Crim. App., Jackson, Feb. 15, 1995), app. denied concurring in results only, (Tenn. Sept. 5, 1995). Rule 4 of the Rules of the Tennessee Supreme Court provides, in relevant part:

> (1) If an application for permission to appeal is hereafter denied by this Court with a "Not for Citation" designation, the opinion of the intermediate appellate court has no precedential value.
> (2) An opinion so designated shall not be . . . cited by . . . any litigant in any brief, or other material presented to any court, . . .
> (3) From and after the effective date of this Rule, the precedential and citation value applicable to intermediate appellate court decisions designated "Not for Citation," shall also apply to intermediate appellate court decisions which have previously been designated, "Denied, Concurring in Results Only" (DCRO), . . . .

Tenn. S.Ct. R. 4(F) (effective Nov. 1, 1999). In Freeman, the supreme court denied permission to appeal, concurring in the results only. Therefore, Freeman has no precedential value. In essence, the State has cited no authority for its assertion and therefore, the argument is waived. See Tenn. Ct. Crim. App. R. 10(b). In fairness to the State, we note that its brief was filed on October 15, 1999, approximately two weeks before the effective date of the amendment to Rule 4. However, no supplemental brief with additional citation(s) has been filed by the State.

Even on the merits, we cannot agree with the State's assertion. There is absolutely no proof in this case that Defendant suffered a seizure before, during, or after the collision with the McGhees' vehicle. Indeed, there is absolutely no evidence that the collision had anything whatsoever to do with Defendant's susceptibility to seizures. Even if Defendant's decision to drive knowing that she could have a seizure could be considered reckless, the fact remains that there is no proof that the risk she created by doing so—that she would pass out and lose control of her vehicle—was the cause of the collision that killed Mr. McGhee and injured Ms. McGhee. Both the vehicular homicide and aggravated assault statutes at issue in this case require that the reckless conduct be the cause of the death or bodily injury. See Tenn. Code Ann. §§ 39-13-102(a)(2)(B), 39-13-213(a)(1) (1997). Thus, Defendant's decision to drive, knowing that there was a possibility that she could suffer a seizure, is insufficient to establish the element of reckless conduct for the offenses in this case.

**B.**

Defendant argues that the State failed to prove that she acted recklessly in the commission of either offense in this case. We conclude that when the evidence is viewed in the light most favorable to the State, as it must be, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Defendant's conduct was reckless as defined by the statute.

The evidence indicates that Defendant was driving at an excessive speed. Officer Church testified that the part of Fort Robinson Drive where the wreck occurred is in a predominantly residential area. In addition, Church testified that Fort Robinson Drive is a two-lane road with a speed limit of 30 miles per hour. Further, it is clear from the photographs that were introduced into evidence and shown to the jury that the section of Fort Robinson Drive where the wreck occurred has a width that is relatively narrow. Armstrong testified that immediately before the wreck, Defendant's Jeep appeared to be traveling faster than 65 miles per hour. Similarly, Officer Farmer opined that at the time of impact, Defendant's Jeep was traveling at a rate of speed in excess of 60 miles per hour. Traveling at this speed, that was more than twice the legal limit, on a narrow two-lane road through a predominantly residential area is certainly driving at an excessive speed.

In State v. Eddie Jake Mysinger, No. 314, 1990 WL 26547 (Tenn. Crim. App., Knoxville, March 14, 1990), this Court held that the evidence was sufficient to support the defendant's convictions for vehicular homicide based on excessive speed alone. This Court held that the evidence was sufficient because the proof established that three victims were killed when the defendant crashed into the rear of their vehicle while driving at a speed of 90 to 106 miles per hour on U.S. Highway 11-E. Id., 1990 WL 26547, at *1. In State v. Wilkens, 654 S.W.2d 678 (Tenn. 1983), the Tennessee Supreme Court held that under certain facts and circumstances, excessive speed alone can be sufficient to sustain a conviction for reckless driving. Id. at 680. The supreme court held that the defendant's conduct of driving at a speed of 120 miles per hour on Highway 45 was sufficient to establish the required element of "willful or wanton disregard for the safety of persons or property." Id.

In this case, we need not decide whether Defendant's excessive speed alone was sufficient to establish that she acted recklessly because there was other evidence establishing recklessness. Officer Church testified that when she questioned Defendant about the wreck, Defendant specifically stated that "she had reached down to put a tape in" while she was singing nursery rhymes to her daughter and she did not see the other vehicle until she crashed into it. Further, Defendant testified two different times during trial that she did not see the McGhees' vehicle in front of her at any point. A rational jury could certainly infer from Defendant's emphatic testimony that she never saw the McGhees' vehicle that Defendant was paying little or no attention to her driving and instead, she was concentrating on putting a tape in the cassette player and singing songs with her daughter. Coupled with the excessive speed on a narrow road in a residential area, the gross inattention to driving constituted reckless conduct.

In short, we conclude that a rational jury could find beyond a reasonable doubt that Defendant had the required mental state of recklessness as defined by the relevant statute and thus, the evidence was sufficient to support her convictions. A rational jury could certainly conclude that Defendant was aware of the substantial and unjustifiable risk that a life-threatening accident could ensue from paying almost no attention to her driving while speeding down a narrow residential road at a speed over twice the legal limit. A rational jury could also conclude that this substantial and unjustifiable risk was of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances. Defendant is not entitled to relief on this issue.

### III.  LENGTHS OF SENTENCES

Defendant contends that the trial court erred when it determined the lengths of her sentences.

"When reviewing sentencing issues . . . including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (1997). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider all the evidence, the presentence report, the sentencing principles, the enhancing and mitigating factors, arguments of counsel, the defendant's statements, the nature and character of the offense, and the defendant's potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -210(b) (1997 & Supp. 1999); Ashby, 823 S.W.2d at 169. "The defendant has the burden of demonstrating that the sentence is improper." Id. Because the record in this case indicates that the trial court did not properly consider the sentencing principles and all relevant facts and circumstances, our review is de novo without a presumption of correctness.

Defendant was convicted of vehicular homicide and aggravated assault, which are  Class C and Class D felonies respectively. See Tenn. Code Ann. §§ 39-13-213(b), 39-13-102(d) (1997). The sentence for a Range I offender convicted of a Class C felony is between three and six years and the sentence for a Class D felony is between two and four years. Tenn. Code Ann. § 40-35-112(a)(3), (4) (1997). The presumptive sentence for a Class C or D felony is the minimum sentence in the range if there are no enhancement or mitigating factors. Tenn. Code Ann.§ 40-35-210(c) (1997). If there are enhancement and mitigating factors, the court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, then reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann.§ 40-35-210(e) (1997).

The record indicates that in determining the lengths of Defendant's sentences, the trial court found that the following enhancement factors applied: (1) Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate sentencing range, (3) the offenses involved more than one victim, (10) Defendant had no hesitation about committing crimes when the risk to human life was high, and (16) the crimes were committed under circumstances in which the potential for bodily injury to a victim was great. See Tenn. Code Ann. § 40-35-114(1), (3), (10), (16) (1997). In addition, the trial court found that mitigating factor (13) applied because Defendant had a good employment history and she had made some effort at self-rehabilitation. See Tenn. Code Ann. § 40-35-113(13) (1997).

Defendant challenges the trial court's application of enhancement factor (1), and we conclude that it was improperly applied. Although it is not entirely clear, the trial court apparently based its application of this factor partly on evidence that Defendant had previously received a ticket for running a stop sign and had paid a fine as a result. We cannot agree that enhancement factor (1) is

applicable merely because a defendant has previously paid a fine for a traffic ticket. Regardless, it is clear that the trial court based its application of factor (1) primarily on evidence that Defendant had previously driven her vehicle after being warned by her doctor that she should not do so. Specifically, the trial court based this finding on a statement from Defendant's doctor that on November 28, 1996, he "reminded [Defendant] that she should not be driving until we can show good seizure control over at least a 6 month period." While there is evidence in the record that Defendant drove during this six month period, there is absolutely no evidence that she ever had a seizure while driving. Further, while the doctor may have cautioned Defendant not to drive during that period, the doctor did not give any indication of the likelihood that Defendant would actually suffer a seizure while driving. While Defendant's decision to drive may have been an exercise of poor judgment, we cannot say that it was criminal behavior. Thus, we conclude that the trial court erred when it applied enhancement factor (1).

Defendant also challenges the trial court's application of enhancement factor (3), and we conclude that it was improperly applied. The record indicates that the trial court applied factor (3) because Defendant's daughter was a passenger of the Jeep, a pedestrian had been walking by the side of Fort Robinson Drive, and Carty became concerned when he witnessed the wreck because he thought that the Jeep might hit a pole in front of his house. We cannot agree with the trial court that these three individuals were "victims" of Defendant's offenses. This Court has previously stated that "victim" as used in enhancement factor (3) "is limited in scope to a person or entity that is injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime." State v. Raines, 882 S.W.2d 376, 384 (Tenn. Crim. App. 1994). There is no evidence in the record that the three individuals noted by the trial court sustained this type of harm and thus, they were not "victims." Indeed, the only victims in this case were Mr. and Ms. McGhee, and Defendant was convicted of a separate offense for each victim. Thus, the trial court should not have applied factor (3). See State v. Clabo, 905 S.W.2d 197, 206 (Tenn. Crim. App. 1995) (holding that factor (3) was an "improper enhancement factor, since there were separate convictions for each victim").

Defendant likewise challenges the trial court's application of enhancement factor (10). Specifically, Defendant contends that the factor was not applicable because a high risk to human life is inherent in the offenses of vehicular homicide and aggravated assault committed by use of a deadly weapon. Defendant is, of course, correct that an enhancement factor may not be applied when the factor is inherent in the crime itself. See State v. Claybrooks, 910 S.W.2d 868, 872 (Tenn. Crim. App. 1994). We agree that a high risk to human life is inherent in the two offenses for which Defendant was convicted and thus, application of enhancement factor (10) would generally be inappropriate. However, this Court has held that even when factor (10) is an element of the offense, it may still be applied where the defendant creates a high risk to the life of a person other than the victim. State v. Bingham 910 S.W.2d 448, 452 (Tenn. Crim. App.1995). In this case, Defendant's commission of the offenses created a high risk to the life of her young daughter, who was a passenger in the Jeep. Thus, we conclude that the trial court properly applied enhancement factor (10).

Defendant also challenges the trial court's application of enhancement factor (16). Specifically, Defendant contends that the factor was not applicable because great potential for bodily

injury is inherent in the offenses of vehicular homicide and aggravated assault committed by causing bodily injury with a deadly weapon. We agree that great potential bodily injury is inherent in both of these offenses and thus, application of enhancement factor (16) would generally not be appropriate. However, as previously mentioned, Defendant's conduct created great potential for bodily injury to her young daughter. This Court has previously held that factor (16) may be applied when individuals other than the victim are subject to injury as a result of the criminal conduct. State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995); State v. Charles Frank Bankston, No. 03C01-9608-CR-00302, 1999 WL 49897, at *24 (Tenn. Crim. App., Knoxville, Feb. 4, 1999), app. denied, (Tenn. July 26, 1999); State v. Troy L. Noles, No. 01C01-9710-CR-00470, 1998 WL 754938, at *3 (Tenn. Crim. App., Nashville, Oct. 19, 1998) (application for permission to appeal filed Dec. 10, 1998); State v. Aaron Eckard, No. 01C01-9610-CC-00429, 1997 WL 769540, at *4 (Tenn. Crim. App., Nashville, Dec. 12, 1997); State v. John D. Joslin, No. 03C01-9510-CR-00299, 1997 WL 583071, at *59 (Tenn. Crim. App., Knoxville, Sept. 22, 1997), app. denied, (Tenn. Nov. 9, 1998). See also State v. Roger Dale Bennett, No. 01C01-9607-CC-00139, 1998 WL 909487, at *9 (Tenn. Crim. App., Dec. 31, 1998), app. denied, (Tenn. May 13, 1999). We recognize that there is a split of authority on this issue, and other panels of this Court have held that factor (16) is not applicable when someone other than the victim is placed at risk of injury. See Bingham, 910 S.W.2d at 452; State v. Joseph Oscar Price III, No. 01C01-9810-CR-00421, 1999 WL 1063414, at *5 (Tenn. Crim. App, Nashville, Nov. 24 1999) (application for permission to appeal filed Jan. 7, 2000); State v. Charles Justin Osborne, No. 01C01-9806-CC-00246, 1999 WL 298220, at *3 (Tenn. Crim. App., Nashville, May 12, 1999). Nevertheless, we conclude that the greater weight of authority permits the application of enhancement factor (16) when individuals other than the victim are subject to injury as a result of the criminal conduct, and we conclude that the trial court properly applied this factor.

In addition, Defendant contends that the trial court should have applied mitigating factor (3), that substantial grounds exist tending to excuse or justify her criminal conduct, although not establishing a defense. See Tenn. Code Ann. § 40-35-113(3) (1997). Specifically, Defendant contends that this factor should have been applied because she does not believe that she was speeding and even if she was, she was speeding on a flat stretch of road on a dry, sunny day. We do not agree that Defendant's own belief that traffic and weather conditions were conducive to speeding and failing to pay attention to her driving either excuses or justifies her criminal conduct. The trial court did not err when it failed to apply mitigating factor (3).

Finally, Defendant contends that the trial court gave too little weight to mitigating factor (13), that she had a good employment history and she had made some effort at self-rehabilitation. However, it is well-established that the weight to be given to each enhancement and mitigating factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. State v. Zonge, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997); State v. Baxter, 938 S.W.2d 697, 705 (Tenn. Crim. App. 1996). The trial court did not abuse its discretion when it determined the weight of the factors in this case.

Even though we hold that the trial court erred in applying two enhancement factors, a finding that enhancement factors were erroneously applied does not equate to a reduction in the sentence. State v. Keel, 882 S.W.2d 410, 423 (Tenn. Crim. App. 1994). Indeed, two enhancement factors and only one mitigating factor apply to Defendant's sentences. Under these circumstances, we conclude that the trial court properly determined the lengths of the sentences in this case. Defendant is not entitled to relief on this issue.

## IV. ALTERNATIVE SENTENCING

Defendant contends that the trial court erred when it failed to impose alternative sentencing in this case.

Under Tennessee law, an especially mitigated or standard offender convicted of a Class C, D, or E felony is generally presumed to be a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6) (1997). Because Defendant was convicted of Class C and Class D felonies, there was a rebuttable presumption that she was a favorable candidate for alternative sentencing. In addition, while the legislature has determined that offenders convicted of certain crimes are statutorily ineligible for probation, vehicular homicide and aggravated assault are not among the listed offenses. See Tenn. Code Ann. § 40-35-303(a) (1997). Moreover, "[t]he legislature has provided that a person sentenced to eight (8) years or less is eligible for probation and other sentencing options, even if convicted for an offense involving the death of another person." State v. Housewright, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997).

When determining suitability for alternative sentencing, the sentencing court considers the following factors: (1) the nature and circumstances of the criminal conduct involved; (2) the defendant's potential or lack of potential for rehabilitation, including the risk that, during the period of the alternative sentence, the defendant will commit another crime; (3) whether imposition of an alternative sentence would unduly depreciate the seriousness of the offense; and (4) whether a sentence of confinement would provide an effective deterrent to others likely to commit similar crimes. Tenn. Code Ann. §§ 40-35-210(b)(4), -103(5), -103(1)(B) (1997 & Supp. 1999); State v. Bingham, 910 S.W.2d at 456.

The record indicates that the trial court based its denial of alternative sentencing on the seriousness of the offense and Defendant's poor potential for rehabilitation.

Regarding the seriousness of the offense, this Court has stated that "[i]n order to deny an alternative sentence based on the seriousness of the offense, 'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." Bingham, 910 S.W.2d at 454. Although the death of Mr. McGhee and injury of Ms. McGhee caused by Defendant's reckless behavior are certainly serious matters, we are unable to conclude that the circumstances of the offenses in this case meet the above standard.

The trial court found that Defendant has poor potential for rehabilitation because she had not been truthful to the court and she had failed to accept full responsibility for her criminal conduct. The record supports the trial court's finding that, in light of the overwhelming evidence introduced during trial that Defendant was driving twice as fast as the legal limit, Defendant was being untruthful when she emphatically denied speeding at the time of the offenses. The record also supports the trial court's finding that, in light of Defendant's claim that she was not speeding, Defendant had failed to accept full responsibility for her actions. This Court has previously stated that poor potential for rehabilitation is demonstrated by a lack of candor with the court, see State v. Leggs, 955 S.W.2d 845, 851–52 (Tenn. Crim. App. 1997), and failure to accept responsibility for criminal conduct, see State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996).

Notwithstanding the indications noted above that Defendant has poor potential for rehabilitation, there are other indications that Defendant has good potential for rehabilitation. For instance, the record indicates that after the offenses in this case, and prior to the convictions, Defendant has not driven, she has surrendered her driver's license, and she has stated that she has no desire to ever obtain another driver's license. Significantly, a major focus in determining potential for rehabilitation is the risk that, during the period of the alternative sentence, the defendant will commit another crime. See Bingham, 910 S.W.2d at 456. In this case, we believe that there is very little risk that Defendant would commit another criminal offense during the period of an alternative sentence. First, other than receiving one traffic ticket, Defendant has no prior record of ever violating the law. Second, the fact that Defendant voluntarily surrendered her license prior to her convictions and has no intention of driving again indicates that she would be unlikely to commit offenses similar to those in this case during a period of alternative sentencing.

Further, we note that in addition to the factors already mentioned, the 1989 Sentencing Reform Act provides that "[s]entences involving confinement should be based on the following considerations: [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct; . . . or [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(A), (C) (1997). Clearly, Defendant does not belong in either of these categories.

In light of the above considerations, we conclude that the trial court erred when it failed to impose alternative sentencing in this case. We conclude in our de novo review that while full probation is not appropriate, a sentence of split confinement is appropriate. Tennessee Code Annotated section 40-33-306 provides, in relevant part:

> A defendant receiving probation may be required to serve a portion of the sentence in continuous confinement for up to one (1) year in the local jail or workhouse, with probation for a period of time up to and including the statutory maximum time for the class of the conviction offense.

Tenn. Code Ann. § 40-35-306(a) (1997). In addition, the statutory maximum sentence for a Range I offender convicted of a Class C felony is six years and the maximum sentence for a Class D felony is four years. Tenn. Code Ann. § 40-35-112(a)(3), (4) (1997). Accordingly, we modify Defendant's sentence for vehicular homicide to a sentence of five years with six months confinement in the local jail or workhouse followed by five years of probation and we modify Defendant's sentence for

aggravated assault to a sentence of four years with six months confinement in the local jail or workhouse followed by four years of probation. The sentences shall remain concurrent with each other.

## V. CONCLUSION

In conclusion, we affirm Defendant's convictions for vehicular homicide and aggravated assault. Further, we affirm the lengths of Defendant's sentences. However, we modify the manner of service of Defendant's sentences to reflect a total effective sentence of five years with six months of confinement in the local jail or workhouse followed by five years of probation.